**Bennie SBRUSCH, Appellant,**

**v.**

**FORT BEND COUNTY DRAINAGE DISTRICT and Fort Bend County, Appellees.**

**No. B14–89–00206–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

April 19, 1990.

Rehearing Denied May 31, 1990.

Robert P. Gaddis, Houston, for appellant.

Margaret A. Wilson, Houston, for appellees.

Before MURPHY, ROBERTSON and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

This appeal is from a judgment notwithstanding the verdict entered in an action for personal injury and property damages arising out of a bridge collapse. While the judgment itself does not specify upon what basis it was granted, the motion therefor asserted four grounds: (1) the defendants owed no duty; (2) the defendants were protected by sovereign immunity; (3) the defendants could not constitutionally maintain the bridge in question; and (4) policy considerations dictated a finding of non-liability. Appellant asserts four points of error attacking each of the four possible bases for the judgment N.O.V. Because we find the trial court erred in granting the judgment N.O.V., we reverse and render judgment on the verdict.

The basic facts of this case are undisputed. In 1955, the landowner of the property in question granted the Fort Bend County Drainage District (District) an 80 foot wide easement across her land for the purpose of constructing a drainage channel. The right of way easement deed provided that the District would "at its expense, construct and provide one bridge crossing of said creek channel adequate and suitable for normal agricultural uses." Additionally, the District bound itself to provide one water gate where the channel entered the land and one water gate where it exited the land. While the easement was silent as to the obligation of the District to repair the bridge or the watergates, the District expressly bound itself to repair "all damage to roads, passageways and fences resulting from the DISTRICT'S use in going to and from said easement...."

The bridge in question, and apparently the water gates, were constructed in 1955 or 1956. The bridge was one of some 200 similar bridges over drainage channels in the county. While the District did not automatically inspect, repair, and maintain

the bridges, the evidence, including testimony from the District's officers and employees, shows that the District did repair these drainage channel bridges when requested to do so by the landowner. The repair work was apparently never a priority item and was done by the District when it had the time and money. An employee of the District testified that the District budgeted $200,000 per year for repairs of these bridges.

Elton Tieman, who farmed a portion of the land to which the bridge was affixed and who used the bridge in question to transport his farm equipment across the channel, testified that he quit using the bridge because he believed it was too weak to support the weight of his farm equipment. He stated that he notified the District in March, 1981, that the bridge was unsafe; that he actually took the District's bridge foreman under the bridge and showed him how rotten the bridge timbers were by sticking his knife into the support posts and by hitting the posts with a hammer; and that the foreman told him "We will take care of it." Nothing had been done, however, by December, 1981, when the accident giving rise to the instant lawsuit occurred.

Appellant, Sbrusch, owned and operated a tandem dump truck which had an empty weight of some 19,000 pounds. On the day of the accident, he was hauling some "bottom ash" from a nearby power plant to put on a driveway. To get to the driveway, appellant crossed the bridge in question. As he was doing so, the bridge gave way, causing his truck to fall some 14 feet to the bottom of the channel. As a result, Sbrusch suffered personal injuries and his truck was "totalled" by the insurance company. There were no warning signs posted at or near the bridge. Immediately after the accident, the appellees removed the old bridge and constructed a new one.

At trial, the jury found the county and the District to have been 60% negligent, and appellant 40% negligent, in causing the accident. It assessed appellant's damages for personal injuries at $75,000 and damage to his dump truck at $27,000.

In his first point of error, appellant contends the trial court erred in granting judgment notwithstanding the verdict because appellees "did breach a legal duty owed to appellant, as recognized by Texas law." We agree.

Appellant based his suit upon the Texas Tort Claims Act which provided that each local unit of government shall be liable for money damages "under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state." TEX.REV.CIV.STAT.ANN. art. 6252–19 § 3 (Vernon 1970) (repealed and now codified as TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1986)). In *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116 (Tex. 1976), the supreme court acknowledged the long recognized rule of this state that "one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby." *Id.* at 119; *see also Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983). As shown above, the evidence establishes that the county and the District voluntarily undertook the affirmative course of action of repairing the drainage canal bridges; that the District bridge foreman stated nine months prior to the accident that they would repair the bridge in question; and that such action was for the benefit of the landowners. Having assumed the duty to repair the bridge, the law imposed upon the county and the District the duty to exercise reasonable care to assure that another's person or property was not injured.

In his second point of error, appellant contends the trial court could not properly base his grant of judgment N.O.V. on the doctrine of sovereign immunity because appellees are not exempt from liability on that theory. The Tort Claims Act provides immunity for a governmental unit if the claim is based on:

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.056 (Vernon 1986). Appellees argue that because the District decides whether to repair bridges over drainage canals on a case-by-case basis, depending upon the availability of county funds, county time, and county labor, the decision to repair is discretionary. As such, a decision to repair the bridge should not subject the District and the county to liability.

We do not agree. While the District had a policy of evaluating each request to repair these drainage canal bridges on a case-by-case basis, appellant's cause of action was not based on the formulation of this policy. Rather, appellant's suit was based upon the negligence of the District in repairing, or failing to repair, the bridge once the decision to repair was made. Thus, it was the implementation of the policy, rather than the policy itself, that subjected the county and the District to liability. *See State v. Terrell,* 588 S.W.2d 784, 788 (Tex. 1979); *Norton v. Brazos County,* 640 S.W.2d 690, 692 (Tex.App.—Houston [14th Dist.] 1982, no writ).

█ The third basis upon which appellees sought judgment N.O.V. was that they could not be liable for failure to repair the bridge because any such use of county resources is not authorized by the Texas Constitution and would, therefore, be an unlawful act. Appellant asserts in his third point of error that if this was the basis for the trial court's action in granting the judgment N.O.V., such reliance was in error. We believe our discussion of the first point of error adequately disposes of this point. The issue, as we see it, is simple. Once the county undertook the repair of the drainage canal ditches and agreed to repair the bridge in question, it owed a duty to exercise reasonable care so that another's person or property would not be injured. Appellees' reliance upon cases holding that the use of county labor, materials, or equipment for anything other than public use are inapplicable to the issue before us.

█ Finally, as a basis for the judgment N.O.V., appellees asserted that policy considerations dictated a finding of non-liability. They now argue that the precedential effect of a judgment against appellees under the facts of this case "would foster a plethora of insoluble dilemmas for the County and Drainage District, in terms of policy making, finances, and even the successful operation of the drainage system necessary to the population of all of Fort Bend County."

Appellees cite no authority, and we are aware of none, which would excuse the county from the duty we have found was owed under the facts of this case. Accordingly, we hold that the trial court erred in granting judgment notwithstanding the verdict.

We reverse the judgment entered by the trial court and enter judgment on the jury verdict of $31,200 for past damages, plus pre-judgment interest as pled for from June 30, 1982, to March 23, 1988, at 10% per annum, compounded daily, in the sum of $24,169.90. Additionally, judgment is entered for future damages in the sum of $30,000, as found by the jury. Finally, appellant is awarded post judgment interest of 10% per annum on the total damages and costs of court.