**FORT BEND COUNTY DRAINAGE
DISTRICT and Fort Bend
County, Petitioners,**

v.

**Bennie SBRUSCH, Respondent.**

No. D–0022.

Supreme Court of Texas.

Sept. 11, 1991.

Rehearing Overruled Dec. 11, 1991.

Margaret A. Wilson, Paul S. Wells, Houston, William W. Kilgarlin, Austin, for petitioners.

Robert P. Gaddis, Houston, for respondent.

## OPINION

COOK, Justice.

This case presents the question whether a governmental unit owed a legal duty to a private individual to repair a privately-owned bridge. Under the facts of this case, we hold that the governmental unit did not owe such a duty. Therefore, we reverse the judgment of the court of appeals, 788 S.W.2d 896, and affirm the judgment of the trial court.

In October 1955, Helen Wersterfer granted an easement across her land to Fort Bend County Drainage District ("District") for the purpose of constructing a drainage channel. In return for the grant of the easement, the District agreed to "construct and provide one bridge crossing of said creek channel adequate and suitable for normal agricultural uses." The District also agreed to "repair all damage to roads, passageways and fences resulting from the DISTRICT'S use in going to and from said easement and right of way." The District then constructed a wood bridge over the channel in a location speci-

fied by Wersterfer's agent. The land on each side of the bridge was subsequently sold to Kenneth Egger.

The bridge in question was one of many bridges over drainage channels in Fort Bend County. The District repaired these bridges when requested to do so by the landowners. The District typically took one or two years to make these repairs, as the granting of such requests was based on the availability of time, money and personnel. The District maintained a $200,000 budgetary line item for the maintenance of the drainage channels, including the repair of bridges.

In March 1981, Elton Tieman informed the District that the bridge was unsafe. Tieman did not own the land on either side of the bridge but had a right of way across it, as this bridge was the only way he could get to his land with his cotton picker. A bridge foreman, Pete Haik, came out and looked at the bridge, and Tieman showed him that the wood pilings under the bridge were rotten. Tieman testified that Haik told him, "We will take care of it." Tieman also testified that Zebesta, the District superintendent, told him "he was going to see what [the District] could do about it and talk to the bosses about it." By December 1981, the District had not repaired the bridge, nor had it placed a sign at or near the bridge warning of its dangerous condition.

In December 1981, Bennie Sbrusch crossed the bridge in a truck loaded with "bottom ash." As he was doing so, the bridge gave way, and Sbrusch's truck fell into the drainage channel. Immediately following the accident, the District cleaned out the drainage channel and constructed a new bridge to insure the proper operation of the channel.

Sbrusch brought the present action against the District and Fort Bend County (collectively, the "District") alleging negligence in failing to repair the bridge and failing to warn the public of its dangerous condition. The jury found the District 60 percent negligent and Sbrusch 40 percent negligent. The jury awarded damages for personal injuries of $75,000 and damages to

the dump truck of $27,000. The District moved for judgment n.o.v. on four grounds: (1) the District did not have a legal duty to Sbrusch to maintain the bridge in question, (2) the District is protected by sovereign immunity, (3) the expenditure of public funds on a private bridge is unconstitutional, and (4) a finding of liability would be contrary to public policy. The trial court granted the District's motion for judgment n.o.v. but did not state the grounds for granting the motion. The court of appeals reversed and rendered judgment on the verdict for Sbrusch. 788 S.W.2d 896. We conclude the District did not have a duty to Sbrusch to repair Egger's bridge or warn Sbrusch of the dangerous condition. Therefore, we reverse the judgment of the court of appeals and affirm the judgment of the trial court.

A court may render judgment n.o.v. if a directed verdict would have been proper. TEX.R.CIV.P. 301. When the trial court states no reason why judgment n.o.v. was granted, and the motion for judgment n.o.v. presents multiple grounds upon which judgment n.o.v. should be granted, the appellant has the burden of showing that the judgment cannot be sustained on any of the grounds stated in the motion. *Monk v. Dallas Brake & Clutch Serv. Co.*, 697 S.W.2d 780, 783–84 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). *See also McKelvy v. Barber*, 381 S.W.2d 59, 61–62 (Tex.1964) (stating the same rule with respect to instructed verdicts). Thus, if the judgment of the trial court can be upheld on any of the four grounds asserted in the District's motion for judgment n.o.v., the judgment must be affirmed.

Sbrusch based his suit on the Texas Tort Claims Act, which then provided that a governmental unit is liable for money damages for "death or personal injuries so caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state." TEX.REV.CIV. STAT.ANN. art. 6252–19 § 3 (Vernon

1970).[1] Section 3 does not create new legal duties; it only waives governmental immunity in circumstances where a private person similarly situated would be liable. *City of Denton v. Van Page,* 701 S.W.2d 831, 834 (Tex.1986). In order to establish tort liability, a plaintiff must prove the existence and violation of a legal duty owed to him by the defendant. *Abalos v. Oil Dev. Co. of Texas,* 544 S.W.2d 627, 631 (Tex.1976); *Coleman v. Hudson Gas & Oil Corp.,* 455 S.W.2d 701, 702 (Tex.1970). The existence of a legal duty is a question of law for the court although in some instances it may require the resolution of disputed facts or inferences which are inappropriate for legal resolution. *Mitchell v. Missouri–Kansas–Texas R.R. Co.,* 786 S.W.2d 659, 662 (Tex.), *cert. denied,* — U.S. —, 111 S.Ct. 247, 112 L.Ed.2d 205 (1990).

■ First, while Sbrusch alleged in his original petition that the accident occurred on a "county bridge and roadway," Sbrusch subsequently abandoned any argument that the District owed him a duty as the owner or occupier of the bridge. Grounds of error not asserted by points of error or argument in the court of appeals are waived. *San Jacinto River Auth. v. Duke,* 783 S.W.2d 209, 209–10 (Tex.1990). In his brief to the court of appeals, Sbrusch does not advance the argument that the District owed him a duty as the owner or occupier of the bridge. In fact, Sbrusch affirmatively indicates that he is not relying upon such an argument, stating,

> APPELLEES' [sic] throughout the trial of this cause tried to couch their defense in terms of a owner/occupier case. They went to great lengths to show that they did not own the BRIDGE. Their argument being that, since they did not own the BRIDGE, they did not have a duty to repair it.... [S]uch a defense is only illusory since it evades the central issue of the case. The central issue of the case is not "owner/occupier" status, but is the liability created when APPELLEES voluntarily assumed a duty and

failed to carry out that duty with reasonable care.

Appellant's Brief at 6–7. Since Sbrusch abandoned the argument that the District owed him a duty as the owner or occupier of the bridge, we cannot consider it.

■ Second, the District did not create the dangerous condition and did not owe Sbrusch a duty on this basis. The testimony in this case was that the bridge collapsed because at least one of the wood pilings supporting the bridge was rotten and "disintegrated" due to age and exposure to the elements. No evidence was introduced that the District created the dangerous condition in some manner independent of the forces of nature, such as by improper construction of the bridge in 1955. Therefore, the District is not liable on the ground it created a dangerous condition.

■ Third, the District did not have a duty arising from the easement agreement. Under this agreement, the District agreed to repair "all damage to roads, passageways and fences resulting from the DISTRICT'S use in going to and from said easement and right of way." Even if this agreement includes repair of bridges, the District had no duty to repair damage due to age or rot, and no evidence was presented showing that the damage to the bridge was caused by the District's use going to and from its easement.

This brings us to Sbrusch's principal argument, that the District voluntarily assumed a duty to repair the bridge by the "promises" made by Haik and Zebesta. This Court has held that "one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby." *Colonial Sav. Ass'n v. Taylor,* 544 S.W.2d 116, 119 (Tex.1976). *See also Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983). As Judge Car-

1. This section is now codified as TEX.CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1986), which provides that a governmental unit is liable for "personal injury or death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."

dozo once wrote, "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, *if he acts at all.*" *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275, 276 (1922) (emphasis added).[2] This rule has evolved. As to third parties, the *Restatement (Second) of Torts* § 324A states the rule as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Restatement (Second) of Torts* § 324A (1965) ("Restatement"). The American Law Institute expressed no opinion, however, as to whether "the making of a contract or a gratuitous promise, without in any way entering upon performance, is a sufficient undertaking to result in liability under the rule stated in this Section." *Restatement* § 324A, caveat(1).

Each of the cases cited to us by Sbrusch is factually distinguishable from the case before us. In *Colonial Savings,* Colonial sent a letter to Taylor stating that it had purchased insurance coverage on certain property, when in fact insurance had only been purchased on one of two houses on that property. The jury found that Colonial had undertaken to provide insurance coverage for both houses. This Court held

that Colonial thereby assumed a duty to exercise reasonable care when purchasing the coverage. *Colonial Savings,* 544 S.W.2d at 120. In *Otis Engineering,* an employer sent an employee home from work in an obviously intoxicated condition. This Court held the employer could be held liable because an employer has a duty to act as a reasonably prudent employer when, because of an employee's incapacity, an employer exercises control over the employee. *Otis Engineering,* 668 S.W.2d at 311. Neither case involved the present situation: an injured third party claiming that a mere promise made to another to perform a future act without in any way entering upon performance of that promise creates a duty.[3]

A mere promise to render a service coupled with neither performance nor reliance imposes no tort obligation upon the promisor. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 56 at 379–80 (Keeton, ed., 5th ed. 1984). When the plaintiff's reliance leads to his harm, some courts have found the requirement of performance to be satisfied by minor acts, such as receiving a document or writing a letter. *Id.; Restatement* § 323 comment d. *See also Restatement* § 324A comment d. In a few decisions, courts have imposed liability for breach of a promise alone in which there had been no performance but where the plaintiff's harm resulted from reliance on the promise. *Prosser and Keeton* at 380.

In the present case, there was neither the slightest performance by the promisor nor reliance by the injured party. The District did nothing after making the promise and the statements made to Tieman by Haik, "We will take care of it," and Zebesta, who was "going to see what [the

**2.** Chief Judge Cardozo expounded on his view in *H.R. Moch Co. v. Rensselaer Water Co.,* 247 N.Y. 160, 159 N.E. 896, 898 (1928), stating, "The query always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument of good."

**3.** *See also Fox v. Dallas Hotel Co.,* 111 Tex. 461, 240 S.W. 517 (1922) (finding defendant who contractually took over control and repair of certain elevators assumed the duty to use ordinary care in maintaining the elevators in a reasonably safe condition and was liable for the negligent maintenance and repair of such elevators), *overruled on other grounds, Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 925 (Tex.1981).

District] could do about it," do not constitute an undertaking of an affirmative course of action. Moreover, since the District's promise was never communicated to the injured party, he certainly cannot be said to have relied on the alleged promise, and we need not decide whether such reliance on the promise alone would give rise to liability. Without some affirmative course of action beyond the making of a mere promise or without reliance on that promise, the District cannot be held liable for Sbrusch's injuries.

 Sbrusch points to a $200,000 line item in the District's budget as additional evidence of an undertaking to repair the bridge. This itemization, however, is for lumber and hardware which is used to repair drainage pipes, fences, watergate installations, low-water fascines, concrete slabs at the bottom of ditches, and other items necessary to properly maintain the drainage channels. These funds are not used to repair privately-owned bridges over the drainage channels unless the District has sufficient time and resources remaining after fulfilling its other maintenance obligations. No evidence was introduced at trial showing that specific funds were set aside for the repair of Egger's bridge. The mere existence of funds which may be used to finance such repairs if not expended on other projects does not constitute an "undertaking" to repair Egger's bridge.

Finally, Sbrusch argues that the District's past conduct in repairing this and other bridges constitutes an undertaking giving rise to a duty to repair on this particular occasion. Although Sbrusch testified that he had no knowledge prior to the accident that the District repaired this bridge in the past, he knew that the District had repaired other bridges in the county, including his own, and argues that this conduct gave rise to a duty to repair Egger's bridge on this occasion.

 The fact that an actor starts to aid another does not necessarily require him to continue his services. An actor may abandon his services at any time irrespective of his motivations for doing so unless, by giving the aid, he has put the other in a worse position than he was in before. A person is put in a worse position if the actual danger to him has been increased by the partial performance, or if in reliance he has been induced to forego other opportunities of obtaining assistance. *Brownsville Medical Center v. Gracia*, 704 S.W.2d 68, 76 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (hospital had a duty not to negligently allow the termination of medical services to a patient); *Restatement* § 323 comment c. *See also United States v. Gavagan*, 280 F.2d 319, 328 (5th Cir. 1960), *cert. denied*, 364 U.S. 933, 81 S.Ct. 379, 5 L.Ed.2d 365 (1961).

 We conclude that the District's past conduct did not give rise to a duty to Sbrusch to act on this occasion. A person's duty to exercise reasonable care in performing a voluntarily assumed undertaking is limited to that undertaking, and will not normally give rise to an obligation to perform additional acts of assistance in the future.[4] A future obligation based on past conduct will arise if the first undertaking has increased a risk of harm, thereby re-

---

4. *See City of Santee v. County of San Diego*, 211 Cal.App.3d 1006, 259 Cal.Rptr. 757 (1989). In *Santee*, a bicyclist suffered injuries when struck by an automobile in an improperly lighted intersection. The bicyclist sued the City of Santee, which sought indemnity from the County. The City argued that inasmuch as County sheriff deputies had previously reported street light outages, the County was obligated to continue performing these acts of assistance, because the City detrimentally relied on the County for this assistance. The court held that while a person can assume a duty to act on a particular occasion, that duty is limited to the discrete episode in which the aid is rendered. *Santee*, 259 Cal. Rptr. at 760–62. Past voluntary acts do not entitle the benefitted party to expect assistance on future occasions, at least in the absence of an express promise that future assistance will be forthcoming. *Id.* at 762. The court pointed out that if a future obligation to assist can be imposed based upon past acts, "an act of humanitarian assistance can become an albatross of mandatory obligation in the future," and the natural consequence will be to discourage people from assisting others in the first instance. *Id.* at 763. In *Santee*, there was no evidence that any express promise was made to City officials to report light outages in the future, and the court therefore refused to find a duty to report the light outage on the occasion in question. *Id.* at 759–62 & n. 3.

quiring additional action to protect third persons, or if the actor makes an express promise that future assistance will be forthcoming, and the injured party relies to his detriment on that promise and the past conduct. In the present case, there is no evidence the District's past repairs *increased* the risk of harm to Sbrusch. Furthermore, while certain statements were made to Tieman indicating that future assistance would be forthcoming, there is no evidence that Sbrusch knew of this "promise" or that he knew of Tieman's request for repairs. Sbrusch's knowledge was limited to discrete episodes of repair to other bridges in the past. Without any knowledge that the District had undertaken to perform further repairs on this bridge, Sbrusch was not entitled to detrimentally rely on the District to perform the needed repair based solely on its past conduct.

To summarize, Sbrusch has abandoned any argument that the District owed him a duty as the owner or occupier of the bridge. The District's written contractual agreement did not give rise to a duty to repair the bridge for damages resulting from age and rot, nor did the District create the dangerous condition. The District did not assume a duty to Sbrusch by the statements made to Tieman because it never entered upon performance nor did Sbrusch rely upon its "promise" to repair. Finally, the District's past conduct did not give rise to a duty to act on this occasion, at least in the absence of any knowledge by Sbrusch of an express promise to act in the future. We conclude that under the circumstances of this case, the District did not have a duty to repair the bridge or to warn Sbrusch of the dangerous condition. In the words of Justice Holmes, "The law does not spread its protection so far." *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309, 48 S.Ct. 134, 135, 72 L.Ed. 290 (1927).

For the reasons stated, we reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Dissenting Opinion by Justice MAUZY.

MAUZY, Justice, dissenting.

Once again, the court sides with the government and against the individual, depriving an injured party of the relief to which a jury found he was entitled. I dissent.

The Texas Constitution guarantees every injured individual a remedy by due course of law, Tex. Const. art. I, §§ 13 and 19, as well as the right to a trial by jury, Tex. Const. art. I, § 15. Today's decision violates both of those guarantees.

I would affirm the judgment of the court of appeals, which reinstated the jury's verdict, for the reasons stated in its opinion.