

## NUMBER 13-12-00495-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **IGLESIA CRISTIANA CRISTO VIVE, INC.,** | **Appellant,** |
| **v.** | |
| **CHURCH OF GOD OF THE APOSTOLIC FAITH LATIN CONFERENCE, INC., ET AL.,** | **Appellees.** |

### On appeal from the 139th District Court
### Of Hidalgo County, Texas.

### MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Longoria
### Memorandum Opinion by Chief Justice Valdez

By three issues, appellant, Iglesia Cristiana Cristo Vive, Inc., appeals from a verdict in favor of appellees, Church of God of the Apostolic Faith Latin Conference, Inc. ("Church of God") and Pablo Sanchez. We affirm.

## I.   BACKGROUND

Rebecca Robles testified that she served as secretary of a church named the Centro De Adoracion Hosanna ("Hosanna") with the Reverend Hilario Chacon serving as the pastor. Hosanna was a member of the Texas Latin American Conference of the International Pentacostal Holiness Church ("TLAC"). On June 9, 1993, Pastor Chacon, on behalf of Hosanna, purchased five acres of land from Border Farms. On that date, a contract for deed was executed between Border Farms and Hosanna. The law offices of Jones, Galligan, and Key ("the Firm") prepared the contract for deed that required the Firm to serve as escrow agents and to hold a warranty deed until the land was paid for in full. The contract for deed was filed in the official records of Hidalgo County, Texas on June 18, 1993. According to appellant's witnesses, the congregation made some of the payments on the contract for deed and also paid for the construction of a building on the land.

The Reverend Roberto Sanchez, Pablo's son and pastor at El Tabernaculo Church in San Juan, Texas and member of the Church of God, stated that he had visited the Hosanna congregation "a number of times and participated in their services." Roberto stated that he met with the congregation and discussed "whether the congregation was in agreement to become part of the Church of God and join with the congregation that was in Donna and become one, and become part of the Church of God." Roberto claimed that at that time he informed the congregation that Hosanna would have to transfer title of the land to the Church of God. Roberto testified that Robles attended this meeting. Roberto explained that the Church of God's procedures include: (1) meeting with the congregation that wishes to become affiliated with the Church of God; (2) giving the

2

congregation the Church of God's bylaws; and (3) allowing the congregation to read the bylaws and go through them.  Roberto testified that the Hosanna congregation agreed to become affiliated with the Church of God and agreed that the property should be put in the Church of God's name as required for affiliation.  Hosanna was then renamed Centro de Adoracion Gracia Abundante ("Gracia").

The trial court admitted into evidence plaintiff's exhibit three, which included an assignment of the buyer's interest in the contract for deed dated March 30, 1995 and an affidavit from attorney Anita G. Lozano explaining what she recalled regarding the March 30, 1995 assignment.  In her affidavit, Lozano stated that on November 16, 1994, Pablo and Pastor Chacon contacted her indicating that "they were in the process of changing the affiliation of [Gracia]" and asking "if the only signature required was that of Pastor Hilario Chacon."  Lozano advised them that they would also need the signature of an authorized representative of TLAC, which was then president, David Avila.  Lozano stated that Avila executed "the Assignment of Buyer's Interest assigning 'all of Assignor's interest in the contract for deed and conveyed to Assignee all of the Assignor's interest in the property.'"  Lozano explained that "[t]his assignment was returned to our office and subsequently executed by [Border Farms and Pablo] as Superintendent of [Gracia] and [Jorge Ricardez], as a member of [Gracia]."  The document shows that Hosanna assigned its buyer's interest in the five acre tract of land to Gracia.

According to Lozano on March 21, 1997, Gary L. Jackson, Border Farms' representative, then informed her that the contract for deed had been assigned to the Church of God.  However, Lozano did not prepare any of those documents.  The trial court admitted plaintiff's exhibit four, a warranty deed with vendor's lien dated February

3

9, 1997. That document shows that Border Farms granted a warranty deed with vendor's lien to Church of God. This document was recorded in Hidalgo County on September 1, 1999 and was witnessed by Robles.

In August 1999, Pastor Ricardez left Gracia and the church closed temporarily because it had no pastor. However, shortly thereafter, the Reverend Ramon Martinez Mendoza then became Gracia's pastor. Evidence was presented that the Church of God ensured that the bills for the church were paid when Gracia did not have a pastor and that it made the final payment of $5,400 on the real property. Evidence also showed that the note and deed of trust were paid in full and that Border Farms executed a release of lien.

Pastor Martinez formed a corporation on August 5, 2002. Martinez testified that he "wanted to have [the congregation] have the things done right because they were not incorporated before, so that's how we come up with the name" Iglesia Cristiana Cristo Vive, Inc. Appellant then sued for title to the real property at issue.

The jury found that appellees had committed fraud and that appellant should have discovered the fraud on March 30, 1995. The jury also found that appellant had acquired the real property by adverse possession. Appellees filed a motion for judgment notwithstanding the verdict seeking to have the jury's finding on fraud liability ignored in light of the jury's finding that appellant should have discovered the fraud in 1995, which was more than four years prior to appellant's filing of suit in 2003 and outside the statute of limitations. Additionally, appellees asked the trial court to set aside the jury's finding of adverse possession because the required ten year period of possession had not passed and because appellant had not been in existence during a ten-year period. The trial court

4

granted appellees' motion without stating the reason and entered a take-nothing judgment against appellant. This appeal ensued.

## II. TRIAL COURT'S FAILURE TO DISREGARD ANSWERS TO QUESTIONS TWO AND FOUR

By its first issue, appellant contends that the trial court erred by failing to disregard answers to jury questions two and four. Question two asked, "By what date should [appellant], in the exercise of reasonable diligence, have discovered the fraud of [Church of God]?" The jury answered March 30, 1995. Question four asked, "By what date should [appellant], in the exercise of reasonable diligence, have discovered the fraud of [Pablo]?" The jury answered March 30, 1995. Appellant argues that although its claims would have been barred by limitations, "limitations were extended under the discovery rule." Appellant claims that "the jury overlooked the fact that the document dated March 30, 1995 on which they relied was not available to Appellant until after it was filed in the public records on June 25, 2003 . . . [a]ccordingly . . . there is no evidence to support these two jury answers." Appellees respond that its statute of limitations defense was established as a matter of law. Therefore, the burden then shifted to appellant to show when it discovered the fraud.[1]

"The party seeking to benefit from the discovery rule must also bear the burden of proving and securing favorable findings thereon. The party asserting the discovery rule should bear this burden, as it will generally have greater access to the facts necessary to establish that it falls within the rule." *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515,

---

[1] In this case appellees requested questions two and four that addressed whether the discovery rule should apply even though it was not mentioned in appellants' pleadings. Therefore, we will address the merits of appellant's discovery rule argument. *See Solares v. Solares*, 232 S.W.3d 873, 880 (Tex. App.—Dallas 2007, no pet.) (concluding that the discovery rule issue had been tried by consent because the other party did not object to submission of jury question regarding when opposing party discovered the injury).

518 n.2 (Tex. 1988). The discovery rule is a very limited exception to statutes of limitations, and its application is generally restricted "to exceptional cases to avoid defeating the purposes behind the limitations statutes." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006). Only if the injury was both inherently undiscoverable and objectively verifiable will the discovery rule delay accrual of a cause of action. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996).

During the judgment notwithstanding the verdict hearing, appellant asked the trial court to disregard the jury's answer to questions two and four "because there's no probative evidence supporting them and that to find what could have been the date." The trial court asked, "Let's suppose that if I disregard those two answers, then you prevail, right?" Appellant's trial counsel replied, "Well, no. If you disregard the answers, that's not enough for us to prevail. You would have to disregard the answers and find that the dates were not dates that barred us. Because if the Court found—you know, there are other dates. . . ." Appellant urged the trial court to find that appellant should have discovered the fraud when an assignment of the loan on the property was filed with the county. However, that document was filed in Hidalgo County on June 25, 2003, after appellant filed its suit against appellees for fraud. Therefore, appellant's claim that it did not discover or could not have discovered the fraud until that document was filed is without merit. Otherwise, appellant could not have sued for fraud before June 25, 2003 because it would not have known about the fraud, but the record shows that appellant filed suit against appellees on April 4, 2003 for fraud.[2]

---

[2] Appellant's original petition is not included in the clerk's record. We note that in the jury charge the jury was informed that this suit was filed on April 4, 2003. In its brief, appellant states that it filed suit on January 31, 2003. However, that date is still prior to June 25, 2003. Therefore, appellant had to have

6

Also, at trial and on appeal, appellant cited no evidence in the record showing that its injury was both inherently undiscoverable and objectively verifiable. *See id.* Appellant does not cite any evidence supporting a finding that it should have or did discover the fraud outside the limitations period. Moreover, even if we were to agree that the evidence does not support the jury's finding that appellant should have discovered the fraud on March 30, 1995, appellant failed to provide evidence that it should have discovered the fraud on another date after the limitations period expired. Therefore, we cannot conclude that appellant met its burden of proving accrual of appellant's fraud cause of action was delayed by the discovery rule in this case. *See Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998) ("[W]hen the discovery rule applies, accrual is tolled until a claimant discovers or in the exercise of reasonable diligence should have discovered the injury and that it was likely caused by the wrongful acts of another."); *Woods*, 769 S.W.2d at 518 n.2. We overrule appellant's first issue.

### III. TRIAL COURT'S DISREGARD OF JURY'S ANSWER TO QUESTION SIX

By its second issue, appellant contends that "[t]he trial court erred in disregarding the answer to jury question No. 6 relating to adverse possession." Question six asked, "Did [appellant], and those under whom it claims, have or hold peaceable and adverse possession of the 5.00 acre tract of land in dispute in this case, cultivating, using or enjoying the same for any period of ten consecutive years prior to April 4, 2003, the date this suit was filed?" The jury answered, "Yes." Appellant asserts that the trial court erred in disregarding this answer because it "met the requirements for the ten year limitations

---

discovered the fraud prior to the recording of the assignment.

periods in that Appellant was in exclusive and adverse possession of the property for more than ten years."

"For a trial court to disregard a jury's findings and grant a motion for [judgment notwithstanding the verdict] on the evidence, it must determine either there was no evidence to support an issue, or the converse, that the evidence established an issue as a matter of law, and the jury was not free to make a contrary findings." *John Masek Corp. v. Davis*, 848 S.W.2d 170, 173 (Tex. App.—Houston [1st Dist.] 1992, writ denied). When the trial court does not specify its reasons for granting a judgment notwithstanding the verdict, the appellant has the burden to discredit each ground in the appellee's motion. *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991) ("When the trial court states no reason why judgment [notwithstanding the verdict] was granted, and the motion for judgment [notwithstanding the verdict] presents multiple grounds upon which judgment [notwithstanding the verdict] should be granted, the appellant has the burden of showing that the judgment cannot be sustained on any of the grounds stated in the motion."); *Friedman v. Houston Sports Ass'n*, 731 S.W.2d 572, 573 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

Appellant does not cite the record in support of its bald assertion that the evidence established the jury's affirmative finding on question six. Moreover, appellant has not provided a clear and concise argument in support of this issue. Thus, we conclude that appellant's second issue is inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

Moreover, the trial court did not specify its reason for granting judgment notwithstanding the verdict, and appellees asserted multiple grounds for the trial court to disregard question six. In its brief, appellant has not challenged each potential ground

for the ruling. *See Fort Bend County Drainage Dist.*, 818 S.W.2d at 394. Therefore, appellant has not met its appellate burden of discrediting each ground in the appellee's motion.[3] *See id.* We overrule appellant's second issue.

## IV. ERROR IN GRANTING JUDGMENT FOR APPELLEES

By its third issue, appellant states the following:

> Appellant contends that the trial court erred in granting judgment for Appellees as Appellees failed to establish their entitlement by conclusive evidence. Appellants presented sufficient evidence to create disputes of material facts as set out in the Statement of Facts above. In such circumstances, the trial court may not grant judgment for the opposing party unless such party has shown there was no evidence supporting the jury findings or that the evidence conclusively proves a fact that establishes the verdict loser's right to judgment as a matter of law.

We construe this issue as being dependent on appellant prevailing on its first and second issues. Because we have overruled those issues, we overrule appellant's third issue.

## V. CONCLUSION

We affirm the trial court's judgment.

*/s/ Rogelio Valdez*
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
29th day of May, 2014.

---

[3] We note that at the judgment notwithstanding the verdict hearing, appellant's trial counsel stated, "Now, we're not asking the Court to grant judgment on the adverse possession because there wasn't exactly ten years. . . . Because we argued nine years and nine months . . . . We are not making a motion on that at this point. So the issue of the adverse possession is—is we are not bringing it before the Court. . . ." Thus, it appears that appellant abandoned its adverse possession claim.

9