# Supreme Court of Texas

No. 22-0227

In re First Reserve Management, L.P.; First Reserve Corporation, L.L.C.; FR XII Alpha AIV, L.P.; FR XII-A Alpha AIV, L.P.; FR Sawgrass, L.P.; and Sawgrass Holdings, L.P.,

*Relators*

On Petition for Writ of Mandamus

**Argued February 22, 2023**

CHIEF JUSTICE HECHT delivered the opinion of the Court, in which Justice Lehrmann, Justice Devine, Justice Blacklock, Justice Busby, Justice Huddle, and Justice Young joined.

Justice Boyd concurred in the disposition.

Justice Bland did not participate in the decision.

On Thanksgiving Eve 2019, serious explosions rocked the TPC petrochemical processing plant in Port Neches, Texas, resulting in extensive personal injury and property damage for miles around, the release of toxic chemicals, and massive litigation. The first suit was filed the same day. Now there are more than 2,000 cases involving more than 7,000 plaintiffs represented by more than 50 law firms consolidated in an MDL court. The issue in this original proceeding is whether Plaintiffs have sufficiently pleaded claims that investors in the plant owner are

directly liable for the damages. We conclude they have not.

# I

## A

The U.S. Chemical Safety Board's investigation concluded that a pipe in the TPC plant ruptured, spilling 6,000 gallons of liquid butadiene, "a highly flammable petroleum-based chemical used in plastic production", which instantly vaporized, ignited, and caused an explosion that could be felt up to 30 miles away.[1] At least one additional explosion occurred later the same day.[2] The county judge declared a state of disaster, required mandatory evacuations, and imposed a curfew. The Golden Triangle[3] sustained widespread property damage, and its people personal injuries.

Plaintiffs sued the plant owner, the TPC Group,[4] alleging that the plant pipe ruptured because of "popcorn polymerization"—a buildup of popcorn-shaped polymers that occurs in the production of butadiene and clogs equipment and pipes. Plaintiffs assert that the buildup could and

---

[1] Erin Douglas, *Federal Report Identifies Cause of 2019 Port Neches Chemical Plant Explosion*, TEX. TRIB. (Dec. 20, 2022, 5:00 PM), https://www.texastribune.org/2022/12/20/texas-chemical-plant-explosion-tpc-port-neches/.

[2] *Id.*

[3] The Golden Triangle is an area of Southeast Texas between the cities of Beaumont, Port Arthur, and Orange. Port Neches is located inside the Triangle, southeast of Beaumont and just a few miles north of Port Arthur.

[4] Plaintiffs sued TPC Group Inc. and TPC Group LLC. Plaintiffs allege that the LLC is the TPC entity that operates the Port Neches plant, but the difference between the two entities is not relevant to Relators' mandamus petition.

2

should have been eliminated by a turnaround[5] that TPC delayed because of its expense.

TPC is owned (indirectly) by Sawgrass Holdings LP,[6] which in turn is owned by two private-investor groups, which Plaintiffs refer to as "First Reserve" and "SK Capital". The general partner of Sawgrass Holdings LP is Sawgrass Holdings GP LLC, which has a five-member Board of Managers. First Reserve and SK Capital each appoint two members to the GP Board, and the fifth is TPC's CEO. Plaintiffs allege that the GP Board manages TPC directly.

Over a year into the litigation, Plaintiffs, by their first amended petition, added the two investor groups and Sawgrass Holdings LP as defendants. They later added Sawgrass Holdings GP. In their third amended petition filed in October 2021, Plaintiffs assert that the investors, through their control of four of the five seats on the GP Board, together with Sawgrass Holdings LP and Sawgrass Holdings GP, are responsible for TPC's failure to perform the needed turnaround and other maintenance that would have prevented the explosions. Throughout the petition, Plaintiffs refer to the investors and Sawgrass Holdings LP collectively as TPC's "Owners"—never distinguishing among them. Continuing that theme, the petition does not distinguish between the conduct of "Owners" and Sawgrass Holdings GP; each

---

[5] A turnaround is a scheduled event where an entire process unit of an industrial plant is taken offline for an extended period for revamp and renewal. Turnarounds are expensive—both in terms of direct costs and because they result in lost production.

[6] Sawgrass Holdings LP owns TPC Holdings Inc., which owns TPC Group Inc., which owns TPC Group LLC.

3

factual allegation is made against "Owners and Sawgrass Holdings GP".

Plaintiffs contend that these defendants were motivated by their desire to minimize TPC's expenses to improve its balance sheet for a future sale. Plaintiffs pleaded that "Owners and Sawgrass Holdings GP" are TPC's alter ego and liable for its torts by piercing the corporate veil and also that they are liable for their own torts, including negligently undertaking to control TPC's day-to-day operations and to ensure plant safety themselves.

Two days after the third amended petition was filed, the First Reserve investor group and Sawgrass Holdings LP moved under Rule 91a to dismiss Plaintiffs' claims against them for having "no basis in law or fact."[7] They argued that piercing the corporate veil is "an extraordinary measure reserved for instances where the facts demonstrate that the owner (1) disregarded corporate formality, and (2) used the corporate form to commit fraud or for illegal purposes" and that "Plaintiffs allege no facts that come close to establishing these exceptional circumstances." Further, they argued that Plaintiffs' non-specific allegations of the movants' control over plant operations were conclusory and insufficient to assert a claim of negligent undertaking or other direct tort. After the MDL court denied the motion to dismiss, the court of appeals denied mandamus review, explaining in a short opinion that Plaintiffs' allegations gave fair notice of its claims.[8]

---

[7] TEX. R. CIV. P. 91a.1 ("[A] party may move to dismiss a cause of action on the grounds that it has no basis in law or fact.").

[8] 665 S.W.3d 44, 45-46 (Tex. App.—Beaumont 2022); *see* TEX. R. CIV. P. 45(b) (requiring that pleadings contain "a statement in plain and concise

4

The First Reserve investor group and Sawgrass Holdings LP sought mandamus review in this Court.[9] We ordered full briefing and heard oral argument on February 22, 2023. Because Plaintiffs make the same allegations against Sawgrass Holdings LP as they do against the First Reserve investor group, we will use First Reserve as a short form for all Relators in the rest of this opinion.

## B

On June 1, 2022, while First Reserve's mandamus petition was pending before this Court, TPC moved for protection in the U.S. Bankruptcy Court for the District of Delaware. That court confirmed a reorganization plan embodying a global settlement under which millions of dollars went to pay the claims of unsecured creditors, including Plaintiffs. As part of the plan, TPC released all claims its estate might have had against First Reserve. In an opinion that issued, coincidentally, during argument in this Court, the bankruptcy court considered "whether the claims the tort plaintiffs intend to pursue against [First Reserve] are claims that belonged to [TPC's] estate[] (and therefore are released and enjoined), or are claims that belong to the plaintiffs themselves, such that they may be pursued in the MDL

---

language of the plaintiff's cause of action or the defendant's grounds of defense" and stating that conclusory allegations are "not . . . grounds for an objection when fair notice to the opponent is given by the allegations as a whole").

[9] The motion to dismiss, filed by the First Reserve investor group and Sawgrass Holdings LP, recites that the SK Capital entities joined the motion separately. The SK Capital entities have not joined as relators in the court of appeals or in this Court. Sawgrass Holdings GP did not join the Rule 91a motion. Thus, the relators in this Court are the entities that comprise the First Reserve investor group and Sawgrass Holdings LP.

5

litigation."[10] The court held that Plaintiffs' veil-piercing and alter ego claims belonged to the estate and were released under the plan and that Plaintiffs were enjoined from prosecuting them.[11]

But the court recognized that Plaintiffs had also alleged a "direct," "negligent undertaking" claim that is "not affected" by the plan or the injunction: specifically, that First Reserve "had sufficient substantive involvement in the operation of [TPC's] business that [First Reserve] undertook responsibility for managing the safety function and [was] negligent in the manner in which [it] carried it out".[12] The court reviewed Plaintiffs' efforts to separate their veil-piercing claims by revising their fifth amended petition, then their operative pleading, with a proposed sixth amended petition. But the court rejected the effort, observing that "it appears that the plaintiffs have endeavored, in the [petition], to say as much as they could about efforts to 'hide behind the corporate veil' while retaining the ability to maintain that the action is not *really* a claim for veil piercing that would be barred by [the] Court's injunction."[13]

The court directed Plaintiffs to submit a revised pleading complying with the plan injunction. Plaintiffs submitted a proposed seventh amended petition, which the bankruptcy court approved by letter dated April 18, 2023. The court explained that "it was not

---

[10] *In re TPC Grp. Inc.*, No. 22-10493 (CTG), 2023 WL 2168045, at *1 (Bankr. D. Del. Feb. 22, 2023).

[11] *Id.* at *2.

[12] *Id.*

[13] *Id.*

6

persuaded by [First Reserve's] argument that a claim for negligent undertaking was really a veil-piercing claim in disguise because both causes of actions relied on allegations that [First Reserve] effectively directed the debtors' operations." Rather:

> The gravamen of the claim for negligent undertaking is that [First Reserve] played such an active role in directing the day-to-day affairs of [TPC] that [First Reserve itself was] effectively making the decisions regarding the company's safety function. Those same factual allegations . . . are also the basis of [Plaintiffs'] veil-piercing claim . . . . The factual overlap, however, does not convert the claim for negligent undertaking into a claim for veil piercing.

"The task of deciding whether plaintiffs' claims fall on one side of the line or another", the court added, "is a surgical one".

## II

## A

Both Plaintiffs, on the one hand, and First Reserve, on the other, have appealed the bankruptcy court's order. Plaintiffs and First Reserve urge us to decide the pending mandamus petition directed to the MDL court's denial of the motion to dismiss Plaintiffs' claims in their third amended petition. We decline to consider First Reserve's arguments regarding Plaintiffs' alter ego, veil-piercing claims as the bankruptcy court has enjoined Plaintiffs from proceeding on them. But the court has now removed from the scope of the plan injunction Plaintiffs' other "direct" claims—principally the tort of negligent undertaking. We leave for the MDL court in the first instance the "surgical" work of excising one from the other. Here, we address whether Plaintiffs' allegations of negligent undertaking and other direct claims in the third amended

7

petition are sufficient to withstand First Reserve's motion to dismiss under Rule 91a.[14]

## B

### 1

Rule 91a provides:

> [A] party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.[15]

"[T]he court may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59."[16]

Plaintiffs' principal claim is that First Reserve undertook to take charge of TPC's day-to-day operations through its appointees to the GP Board and was negligent in failing to make the plant's operations safe. Under Texas law, a defendant who undertakes "to render services that it knows or should know are 'necessary for the protection of the other's person or things'" must generally "exercise reasonable care in

---

[14] Against First Reserve, the third amended petition alleges negligence (Counts IV-V, VII), gross negligence (Counts IV-V, VIII), nuisance (Count VI), and "misrepresentations" or fraud (Count VII). Each claim is based on the same allegations, and throughout the litigation, both sides have treated all the direct-liability claims pleaded as a single claim for negligent undertaking. Our analysis follows their lead and applies to all direct-liability claims pleaded in the third amended petition.

[15] TEX. R. CIV. P. 91a.1.

[16] TEX. R. CIV. P. 91a.6.

performing the undertaking."[17] "The critical inquiry concerning the duty element of a negligent-undertaking theory is whether a defendant acted in a way that requires the imposition of a duty where one otherwise would not exist."[18] But the duty is only implicated when the complained-of undertaking is an affirmative course of action; liability for negligent undertaking cannot be predicated on an omission.[19] Nor can liability for negligent undertaking be predicated on a promise to render a service that is not accompanied by either performance or *reliance* on the promise *by the injured party*.[20]

Plaintiffs have no claim that First Reserve undertook to run TPC based on its indirect ownership of TPC. "Creation of affiliated corporations to limit liability while pursuing common goals lies firmly

---

[17] *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 151 (Tex. 2022) (quoting *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000)).

[18] *Id.* (quoting *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013)).

[19] *See id.* at 152 ("[N]ot giving a safety warning is an omission, not an undertaking."); *id.* at 152 n.80 (collecting cases).

[20] *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 396 (Tex. 1991). In this case, plaintiff Sbrusch was injured while crossing over a bridge that collapsed. The bridge was one of many that crossed over a drainage channel maintained by the District. The District had a history of repairing the bridges over the channel when nearby landowners requested it; the District maintained a budgetary line item for maintenance of drainage channels; and, prior to Sbrusch's accident, a District employee told a landowner that the District would try to repair the specific bridge on which Sbrusch was injured. We held that the District could not be liable to Sbrusch for negligent undertaking. We reasoned that Sbrusch could not have relied on the employee's "promise" that the District would repair the bridge because the promise was never communicated to Sbrusch. *Id.* at 397. We further held that neither the District's promise to repair the bridge nor its budgetary line item for maintaining drainage channels amounted to an affirmative course of action. *Id.*

9

within the law and is commonplace."[21] As long as companies are distinct legal entities, they are not liable for each other's conduct unless some exception applies to remove this limited liability.[22] Nor can Plaintiffs base their claim on First Reserve's right to appoint members to the GP Board. Even when one company appoints a loyal employee to the board of a separate legal entity, the appointing company does not become liable for the board's conduct.[23] "[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts."[24] Plaintiffs do not argue to the contrary:

> Plaintiffs do not disagree with Relators that "[t]he acts of a company's board are not imputed to that company's private-equity investors **merely** because the investors appointed directors to the board." Nor do Plaintiffs disagree that "Texas law does not strip a private-equity investor of limited liability for a portfolio company's torts **merely** because the investor engages in industry-standard investment practices." Plaintiffs do not **merely** allege that Relators appointed directors to TPC's board and engaged

---

[21] *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008).

[22] *See id.* ("We have never held corporations liable for each other's obligations merely because of centralized control, mutual purposes, and shared finances. There must also be evidence of . . . fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, [or] the like.").

[23] *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 198-199 (Tex. 1995) (holding that a company with the power to elect a majority of members to a homeowners' association was not liable for decisions made by the association with respect to security measures).

[24] *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (quoting *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 57 (2d Cir. 1988)).

10

in industry standard investment practices.[25]

The U.S. Supreme Court has summarized the law this way: "[N]orms of corporate behavior . . . are crucial reference points" when "distinguishing a parent['s] . . . oversight of a subsidiary" from the parent's "control over the operation of the subsidiary's facility."[26] "Activities that involve the facility but which are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct liability."[27]

A cause of action has no basis in law under Rule 91a if it is barred by an established legal rule and the plaintiff has failed to plead facts demonstrating that the rule does not apply.[28] Because liability cannot

---

[25] Brief in Response of Real Parties-in-Interest (Plaintiffs) at 22 (quoting Relators' Brief on the Merits at 41, 48).

[26] *Bestfoods*, 524 U.S. at 71-72.

[27] *Id.* at 72 (alterations omitted) (quoting Lynda J. Oswald, *Bifurcation of the Owner and Operator Analysis under CERCLA: Finding Order in the Chaos of Pervasive Control*, 72 WASH. U. L.Q. 223, 282 (1994)); *see also id.* ("The critical question is whether, in degree and detail, actions directed to the facility by an agent of the parent alone are eccentric under accepted norms of parental oversight of a subsidiary's facility.").

[28] *See In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 269 (Tex. 2021) (holding that the plaintiff's claim had no basis in law and should have been dismissed under Rule 91a where she had "identifie[d] no pleaded facts that would take her claim outside [the] legal rule" that an insurer is not vicariously liable for the conduct of an independent attorney it retains to defend an insured); *In re Hous. Specialty Ins. Co.*, 569 S.W.3d 138, 141 (Tex. 2019) (holding that a request for a declaration of nonliability in tort had no basis in law and should have been dismissed because the request violated the rule of *Abor v. Black*, 695 S.W.2d 564 (Tex. 1985)); *In re Essex Ins. Co.*, 450

be based on First Reserve's ownership interest in TPC, its appointments to the GP Board, or any other action that is consistent with its investor status, Plaintiffs must have pleaded facts showing that First Reserve undertook in other ways to run TPC's day-to-day operations and, specifically, to delay the turnaround that could have prevented the explosions.

These allegations must satisfy our notice-pleading rules, which "require pleadings to not only give notice 'of the claim and the relief sought' but also of the essential factual allegations."[29] "As we have explained many times, a 'cause of action' means the 'fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief.'"[30] It is not enough for the plaintiff to provide fair notice of the *claims* alleged because "[t]he pleading of a legal theory, without more, does not provide notice of the facts that could be pleaded to support that theory."[31] The plaintiff must plead "the essential factual allegations supporting those claims",[32] which must be

S.W.3d 524, 527-528 (Tex. 2014) (holding that the trial court erred by denying Essex's Rule 91a motion because the declaratory judgment requested by the plaintiff violated Texas' "no direct action rule", which prohibits an injured party from suing a tortfeasor's insurance company before liability has been established).

[29] *Kinder Morgan SACROC, LP v. Scurry County*, 622 S.W.3d 835, 849 (Tex. 2021) (quoting *Montelongo v. Abrea*, 622 S.W.3d 290, 299-300 (Tex. 2021)).

[30] *Id.* at 849 n.63 (quoting *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012)).

[31] *Id.* at 850.

[32] *Id.* at 849 (citing *Montelongo*, 622 S.W.3d at 299-300).

sufficient to support a judgment if ultimately proven.[33]

**2**

As we have noted, Plaintiffs' petition refers to TPC's "Owners" (including First Reserve) and Sawgrass Holdings GP collectively. Plaintiffs allege that "Owners and Sawgrass Holdings GP undertook direct operational control of the TPC plant in Port Neches and assumed the duty of risk mitigation as well as other duties". But Plaintiffs also assert that TPC was controlled by the Board of Sawgrass Holdings GP, which did not join the Rule 91a motion and is not a relator here. Plaintiffs' only factual allegation about how First Reserve itself exercised "operational control" over TPC is that First Reserve acted "through the Board" of Sawgrass Holdings GP. But as we have explained and Plaintiffs now concede, First Reserve's right to appoint two of the five members of the GP Board does not subject it to liability for TPC's conduct. Because Plaintiffs make no allegation that First Reserve—a group of entities that are distinct from Sawgrass Holdings GP—undertook to render services to TPC, their negligent-undertaking claim has no basis in law.[34]

For example, Plaintiffs allege that First Reserve and Sawgrass Holdings GP refused to authorize a turnaround and other safety expenditures in order to keep TPC's balance sheet strong for a possible sale. Yet as we have said, an undertaking duty cannot be predicated on

---

[33] *See id.* at 850-851.

[34] *See* Tex. R. Civ. P. 91a.1 ("A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.").

13

an omission,[35] a promise that is not performed or relied on by the injured party,[36] the failure to make an expenditure,[37] or a parent's supervision of its subsidiary's financial and budgetary decisions.[38] And in any event, First Reserve had no authority itself over TPC's budget and expenses. That authority was vested solely in the GP Board, not in First Reserve. Plaintiffs allege that "Owners and Sawgrass Holdings GP . . . den[ied] funds to adequately supply the plant with spare parts . . . or perform necessary maintenance needed to keep the plant safe", but they have not pleaded a single instance in which First Reserve *itself* decided whether to provide or withhold resources to TPC. To be sure, Plaintiffs have pleaded at great length that First Reserve controlled TPC, but the only factual bases pleaded are that First Reserve had an ownership interest in TPC and designated two GP Board members, both of which Plaintiffs acknowledge are insufficient to subject First Reserve to liability for TPC's actions.

In their merits brief, Plaintiffs summarize their allegations this way:

> Plaintiffs specifically plead Relators acted with direct operational control over safety with respect to the safeguards, protocols, procedures, personnel, equipment, inspections, and resources and control such that Relators took control away from TPC and supplanted TPC's duties to its employees and the public with respect to the specific safety decisions that led to the explosion and the harms

---

[35] *Kenyon*, 644 S.W.3d at 152 & n.80.

[36] *Sbrusch*, 818 S.W.2d at 396.

[37] *See id.* at 397.

[38] *Bestfoods*, 524 U.S. at 72.

14

that followed.[39]

But Plaintiffs pleaded that First Reserve "and Sawgrass Holdings GP" did these things. Plaintiffs do not state factually *how* First Reserve itself took and exercised such control other than through its ownership interest and the GP Board, which, again, Plaintiffs concede is not enough for a negligent undertaking. Plaintiffs add: "When an 'owner' actively inserts itself into the day-to-day operational decisions of a company—and makes specific—and erroneous—operational decisions that blow up a plant—Court-manufactured immunity will not lie."[40] Perhaps not, but Plaintiffs must have alleged facts to show that is what First Reserve did.

Plaintiffs' third amended petition makes many *legal accusations* but no *factual allegations* to show a cause of action with a basis in law against First Reserve for TPC's conduct. The MDL court should have granted First Reserve's motion to dismiss.

\* \* \* \* \*

The posture of this case presents us with very exceptional circumstances. Plaintiffs' third amended petition asserts claims that the bankruptcy court enjoined Plaintiffs from prosecuting at the very time the case was being argued in this Court. But that court has since allowed Plaintiffs to proceed on other claims that were asserted in the third amended petition and now included in a proposed seventh amended petition, though they are entangled with the prohibited claims. Those

---

[39] Brief in Response of Real Parties-in-Interest (Plaintiffs) at 39 (emphasis omitted).

[40] *Id.* at 40.

developments do not moot whether the allegations in the third amended petition state a cause of action with a basis in law or fact. Plaintiffs cannot, simply by amending their pleadings, avoid a determination of the issues in this proceeding, nor have they sought to do so. Plaintiffs and First Reserve not only argue that our ruling on those issues is appropriate, they urge us to rule.

And we have. But we will not direct the MDL court to take action. Mandamus is discretionary and "controlled by equitable principles",[41] and we cannot determine what disruption a directive would have on proceedings that have been stayed during the bankruptcy proceedings and may resume on a different petition.[42] With that explanation, we deny First Reserve's petition for writ of mandamus.

Nathan L. Hecht
Chief Justice

**OPINION DELIVERED:** June 23, 2023

---

[41] *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993).

[42] Plaintiffs argue that their negligent-undertaking claim should not be dismissed before they have had the opportunity to conduct full discovery from First Reserve. First Reserve counters that a plaintiff must make a "reasonable inquiry" into the facts before filing suit, TEX. R. CIV. P. 13, and that Plaintiffs have already obtained significant discovery from TPC in any event. We note that the time standards in Rule 91a leave little room for discovery before a motion under the rule must be filed and ruled on. But as we are declining to grant relief, we leave it to the trial court to adjudicate the parties' discovery dispute when proceedings resume in that court.