**Affirmed in Part, and Reversed and Remanded in Part, and Majority and Dissenting Opinions filed June 24, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00409-CV

---

### CASSIE LANDRUM, INDIVIDUALLY, AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JEFFREY LANDRUM, Appellant

### V.

### THREE ACES TOWING, INC. D/B/A THREE ACES STORAGE, Appellee

---

**On Appeal from the 344th District Court
Chambers County, Texas
Trial Court Cause No. 18DCV0253**

---

### MAJORITY OPINION

Appellant Cassie Landrum, individually, and as personal representative of the estate of Jeffrey Landrum, appeals the trial court's order granting summary judgment to appellee 3 Aces Towing, Inc. d/b/a 3 Aces Storage, and the subsequent denial of appellant's motion for new trial. We affirm, in part, and reverse and remand, in part.

# I.  BACKGROUND

On August 14, 2017, decedent Jeffery Landrum ("Landrum") was employed as a tractor trailer driver by General Shelters of Texas, LTD. ("General Shelters"), a manufacturer of portable storage units.  Landrum transported and delivered portable storage units from General Shelters' trailer.  One aspect of Landrum's job was to physically unload the storage units from the tractor trailer.

Robert Hancock and Dawn Hancock are the owners and officers of 3 Aces Towing, Inc. d/b/a 3 Aces Storage ("3 Aces") located at 21117 Interstate Highway 10 Wallisville, Texas.  Robert is the president and Dawn is the vice president/treasurer.  Although 3 Aces is primarily a wrecker company, it also operates a public mini-storage facility and sells storage units manufactured by General Shelters on the 3 Aces property.[1]  On average, General Shelters has about twenty buildings on 3 Aces' premises.  To maintain inventory, General Shelters delivers storage units approximately three times a year, typically with at least three units per delivery.

On August 14, 2017, Landrum arrived at 3 Aces' facility to deliver two 8x8 General Shelters' storage buildings.  Landrum did not have anyone with him to assist with unloading the buildings.  Landrum asked Dawn if Robert was available to help him.  Dawn advised Landrum that Robert was in his tow truck responding to an accident and that he would be back in thirty or forty minutes if Landrum would like to wait in 3 Aces' office.  Landrum, however, told Dawn he did not want to wait.  In addition to the two buildings to deliver to 3 Aces, Landrum had two buildings to deliver in Dickinson, Texas before returning to Center, Texas.

---

[1]  3 Aces started doing business with General Shelters in 2015.  The two companies have a commission sales contract.  3 Aces receives ten percent commission from each sale.  The buildings sell for approximately  $5,000.00.

Landrum asked Dawn to borrow some tools to take the "wide load" signs off the trailer. Dawn drove Landrum and her two grandchildren in a golf cart from the office to the garage where Robert stored his tools; Landrum found the tools he needed and Dawn drove them back over to where Landrum had parked the truck. After removing the "wide load" signage from the truck, Landrum got behind the 8x8 building and began pushing it toward the end of the trailer. Although the General Shelter's truck was equipped with a winch, Landrum did not utilize the winch. Dawn did not observe Landrum using a rope, chain, or any other sling to pull the building.

At some point, however, the rollers on which the building was situated became stuck and the building would not move. Landrum asked Dawn if she could help him push the building to the end of the trailer, which she estimated was maybe a foot. While her grandchildren sat in the golf cart, Dawn walked over to where Landrum was standing on the passenger side of the trailer and while Landrum pushed from the top, Dawn pushed from the bottom of the same corner. They pushed the building to the very end of the trailer. Dawn recalled that Landrum already had pulled out the ramps that go down from the end of the trailer. Landrum asked Dawn to step away in case the building were to fall. Landrum told Dawn he was going to pull it and walk it down with his hands.

Dawn saw Landrum leave the side of the building, but then turned her attention to her grandchildren. Dawn then heard the building crash. Dawn ran to the other side of the building to see if Landrum was on the other side of it. She realized Landrum was underneath the building when she heard him calling out her name for help. Dawn tried to lift the building but could not move it. She telephoned 911 for help. She continued to speak with Landrum while waiting for emergency services to arrive; however, when Landrum stopped speaking, Dawn

ran to the excavator[2] 3 Aces kept on the property. Although Dawn had never operated the excavator, she drove it over to the fallen building. After one failed attempt, Dawn was able to hook a chain on the building and lift up the building with the excavator. Dawn then located two cinder blocks and placed the blocks underneath the building. It was too late; Landrum died from his injuries.

On April 12, 2018, appellant Cassie Landrum, on behalf of herself and her father's estate ("appellant"), filed suit against General Shelters, Robert, Dawn, and 3 Aces for the injuries and subsequent death of her father. Appellant asserted claims for negligence and, alternatively, premises liability.

On December 11, 2018, Robert, Dawn, and 3 Aces' filed their traditional motion for summary judgment, using as evidence in support of their motion appellant's first amended petition, excerpts from the depositions of Dawn and Robert. In their motion, they argued that the facts demonstrate that, at all relevant times, Robert and Dawn were acting as employees and/or representatives of 3 Aces. As such, they argued that summary judgment should be granted as to appellant's claims against Robert and Dawn in their individual capacities. They further maintained that they were entitled to summary judgment on appellant's premises liability claim because the facts demonstrate that the incident did not arise out of a condition on the property and that Landrum was aware of the danger of the building falling as he told Dawn to step back. Finally, they asserted they were entitled to summary judgment on appellant's negligence and gross negligence claims because they owed no duty to Landrum. They argued they did not exercise any control over Landrum as he was employed by General Shelters and General Shelters owned the tractor/trailer Landrum drove.

---

[2] Excavators are heavy construction equipment featuring a bucket, arm, rotating cab, and movable tracks. Excavators are used for construction tasks, including landscaping, digging holes and trenches, lifting, placing large objects, and demolition of structures.

4

The following day, on December 12, appellant filed a second amended petition, asserting causes of action for negligence, gross negligence, premises liability, and negligent undertaking.

Robert, Dawn, and 3 Aces filed a supplement to their motion for summary judgment addressing the additional claim of negligent undertaking set forth in the second amended petition. They argued they were entitled to summary judgment on this claim as well because none of Dawn's actions were undertaken for Landrum's protection; rather, Dawn assisted in moving the unit about a foot because it had become stuck on the trailer. Additionally, they argued that Landrum did not rely upon Dawn because he told her to move out of the way. Finally, they asserted that the mere act of helping Landrum push the unit to the edge of the trailer did not cause or contribute to the accident and did not increase the risk. They contended that Landrum was solely responsible for the determination as to the method as to how to unload the trailer.

On January 10, 2019, appellant filed her response to their motion for summary judgment. Appellant argued that summary judgment should be denied because Dawn voluntarily undertook to perform a duty owed by another to Landrum and was negligent in doing so. Appellant asserted that Dawn owed Landrum a duty of ordinary care. Appellant contended that Dawn, by voluntarily assisting Landrum in the unloading of the building, undertook to perform a duty to safely assist him that was owed to Landrum by General Shelters. Appellant maintained that by performing that duty in a negligent manner, 3 Aces remains liable to appellant and summary judgment should be denied.

Thereafter, Robert, Dawn, and 3 Aces filed their reply arguing Dawn did not assume a duty and should not have recognized a danger by simply helping Landrum move the building to the edge of the trailer after it had become stuck.

5

They further argue that Robert was not even present on site at the time of the incident and, thus, could not have breached any duty to Landrum.

On January 17, 2019, the trial court heard oral argument on 3 Aces' motion for summary judgment. The following day, January 18, pursuant to the trial court's request, appellant submitted supplemental letter briefing. Additionally, on that same day, appellant filed a partial notice of non-suit without prejudice, dismissing her claims against Robert and Dawn individually. On January 22, 2019, the trial court granted appellee's motion for summary judgment.

On February 6, 2019, General Shelters supplemented its discovery responses with a copy of the consignment agreement between itself and 3 Aces. The next day, February 7, Robert, Dawn, and 3 Aces filed an opposed motion to sever, which the trial court granted on February 11, 2019.

On March 4, 2019, appellant filed a motion to reconsider summary judgment, arguing that the consignment agreement between 3 Aces and General Shelters imposes a contractual duty upon 3 Aces to be responsible for the delivery and set-up of General Shelters' buildings. Appellant argues that this changed the analysis of the duty question in this case. On March 5, 2019, appellant filed a motion for new trial based on the consignment agreement. Robert, Dawn, and 3 Aces filed a response to both motions, contending that the consignment agreement is not material because it only required 3 Aces to "coordinate the delivery and set-up of any item of inventory."

On May 14, 2019, the trial court denied appellant's motion to reconsider and motion for new trial. This appeal timely followed.

II. ANALYSIS

Appellant raises two issues on appeal. In her first issue, appellant contends the trial court abused its discretion in denying appellant's motion to reconsider and motion for new trial. In her second issue, appellant argues the trial court erred in granting 3 Aces' motion for summary judgment, asserting 3 Aces owed Landrum a legally cognizable duty when Dawn became involved in the unloading procedure.

## A. MOTION TO RECONSIDER AND MOTION FOR NEW TRIAL

### 1. STANDARD OF REVIEW AND GOVERNING LAW

We review the trial court's denial of a motion to reconsider and motion for new trial for an abuse of discretion. *See Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 372 (Tex. 2000); *Wichman v. Kelsey-Seybold Med. Group, PLLC*, No. 14-18-00641-CV, 2020 WL 4359734, at *2 (Tex. App.—Houston [14th Dist.] July 30, 2020, no pet.); *Macy v. Waste Mgmt. Inc.*, 294 S.W.3d 638, 651 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). We generally, however, do not defer to the trial court on questions of law. *See Schuring v. Fosters Mill Vill. Cmty. Ass'n*, 396 S.W.3d 73, 76 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("The abuse of discretion standard of review means different things in different contexts. In general, we do not defer to the trial court on questions of law, and we defer to a trial court's factual findings if they are supported by evidence.").

### 2. CONSIGNMENT AGREEMENT

After the trial court rendered the summary judgment order in favor of Robert, Dawn, and 3 Aces, appellant filed a motion for reconsideration that included evidence of a consignment agreement between General Shelters and 3 Aces that had not been presented to the trial court. Appellant argues that the trial court abused its discretion in refusing to reconsider Robert, Dawn, and 3 Aces'

summary judgment motion because the consignment agreement was new, material evidence that likely would have changed the outcome of the trial court's decision.

It is undisputed that General Shelters did not supplement its responses to appellant's April 2018 discovery request with the consignment agreement until February 6, 2019, which was approximately two weeks after the trial court rendered summary judgment. Despite being served with the same discovery requests, 3 Aces never provided appellant with a copy of the consignment agreement. Appellant argues that the consignment agreement demonstrates that 3 Aces had a contractual duty to assist Landrum with the unloading of the buildings.

Appellant argues that the consignment agreement imposes a duty upon 3 Aces and makes it responsible for the delivery of the General Shelters' buildings. Appellant cites to paragraph 9 of the consignment agreement, which provides:

> **9. Delivery and Set-up to Customer:** It is the responsibility of Consignment Distributor [(3 Aces)] to coordinate the delivery and set-up of any item of inventory sold by Consignment Distributor.

Appellant argues that 3 Aces' summary judgment argument rested its claim that it had no duty with regard to the delivery process. Appellant argues that this claim is refuted by the consignment agreement. Appellant contends that this provision imposes a duty on 3 Aces and makes it responsible for the delivery of General Shelters' buildings. Appellant argued that in exercising such a duty, 3 Aces was negligent. At a minimum, appellant argues that the evidence of contractual duty presented more than a scintilla of evidence whereby appellant's claims should have survived summary judgment.

3 Aces contends that the consignment agreement is not material because it only required 3 Aces to "coordinate the delivery and set-up of any item of inventory." As set forth in bold, the portion of the consignment agreement at issue

8

relates to delivery and set up to the customer. It does not require or even reference 3 Aces unloading the buildings or supervising the process. Thus, 3 Aces maintains that the consignment agreement itself does not support appellant's contention.

Additionally, 3 Aces also argues that Rusty Sanford ("Sanford"), transportation supervisor for General Shelters, testified at his deposition about his understanding of the meaning of the consignment terms "coordinate and set-up," stating that General Shelters did not expect 3 Aces to unload the sheds. Sanford testified that the only thing that General Shelters expected from 3 Aces was to:

> show up and look at the buildings, but not – not the unloading procedure, only to verify that they got a good quality product at that point; that our driver did not fail to tell us that they damaged something.

As for coordination, General Shelters did not expect Dawn or Robert or anyone from 3 Aces to be present during the time of unloading or assist in the unloading. With regard to the term "set up," it references the end-user's location–*i.e.*, once the customer bought the product, set-up refers to putting the building on the customer's site. In this regard, Dawn testified as to the history of their dealings and that she typically was not present for the unloading of the buildings; Robert testified he was not present at the time of the incident and on a few prior occasions had assisted a driver unloading larger sheds by hooking up a chain to the runners of the building, backing up the excavator, and pulling the building off the trailer.

Based on the terms of the assignment agreement itself as well as the deposition testimony of Sanford, Dawn, and Robert, the trial court could have determined that the consignment agreement was not so material that it would probably have produced a different result if a new trial were granted. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010) (setting forth elements a party seeking a new trial based on newly discovered evidence must demonstrate).

Thus, we cannot conclude the trial court abused its discretion by refusing to reconsider its summary judgment and/or grant appellant a new trial based on an alleged contractual duty under the consignment agreement.

Appellant's first issue is overruled.

## B. SUMMARY JUDGMENT

### 1. STANDARD OF REVIEW

We review the granting of a summary judgment under a de novo standard of review. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). "[W]e apply the familiar standard of review appropriate for each type of summary judgment, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 675–76 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

To prevail on a traditional motion for summary judgment, a movant must establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848. Once the movant facially establishes its right to summary judgment, the burden shifts to the nonmovant to present a material fact issue that precludes summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Dolcefino v. Randolph*, 19 S.W.3d 906, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

When, as here, the trial court's order granting summary judgment does not specify the grounds relied on for the ruling, the summary judgment will be affirmed if any of the theories advanced are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993); *Olmstead v. Napoli*, 383 S.W.3d 650, 652 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

## 2. NEGLIGENT UNDERTAKING

To sustain her negligence claim, appellant was required to establish that 3 Aces violated a legal duty owed to Landrum. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000). Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances. *See SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995); *see also* Restatement (Second) of Torts § 314 (1965) ("The fact that [an] actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."). For example, one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby. *See Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395–96 (Tex. 1991) (citing *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119 (Tex. 1976)).

Appellant claims that 3 Aces owed a duty of care to Landrum under a negligent undertaking theory. To establish a negligent undertaking, a plaintiff must demonstrate that "(1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; (2) the defendant failed to exercise reasonable care in performing those services; and either (a) the plaintiff relied upon the defendant's performance, or (b) the defendant's performance increased the plaintiff's risk of harm." *Nall v. Plunkett*,

404 S.W.3d 552, 555–56 (Tex. 2013) (citing *Torrington Co.*, 46 S.W.3d at 838–39 and Restatement (Second) of Torts § 324A (providing rule for liability to third person for negligent performance of undertaking)).[3]  The undertaking may be gratuitous or for consideration, and a contractual obligation may be an undertaking so long as it is accompanied by at least partial performance or reliance.  *See Sbrusch*, 818 S.W.2d at 397.

As with any negligence claim, a negligent-undertaking claim requires proof that the defendant owed the plaintiff a legal duty and violated it.  *See Torrington*, 46 S.W.3d at 837.  The existence of a legal duty is a question of law for the court.  *Nabors Drilling, U.S.A. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009); *Sbrusch*, 818 S.W.2d at 395. "Any such determination involves the balancing of a variety of factors, 'including the risk, foreseeability, and likelihood of injury, and the consequences of placing the burden on the defendant.'"  *Allen Keller v. Foreman*, 343 S.W.3d 420, 425 (Tex. 2011) (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010)).

---

[3]  With respect to liability to a third person, the Restatement (Second) of Torts section 324A, "Liability to Third Person for Negligent Performance of Undertaking," provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform] his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).

### 3. APPLICATION

With respect to the duty element of her negligent-undertaking claim, appellant was first required to present evidence that Dawn "undertook to perform services that it knew or should have known were necessary for [Landrum's] protection." *See Nall*, 404 S.W.3d at 555–56. Appellant argues that Dawn, as a corporate officer of 3 Aces, voluntarily undertook to perform a duty owned by another to Landrum and was negligent in doing so. Appellant contends that Dawn, as an agent of 3 Aces, voluntarily assumed the duty to help Landrum unload the building and became directly involved in the unloading process. Appellant maintains that Dawn undertook an active role in the unload procedure and that she was negligent in doing so because she increased the risk of harm to Landrum by joining in the unload procedure, pushing the building to the edge of the trailer, and then leaving Landrum to control the building by himself.

Although 3 Aces maintains that Dawn did not undertake a duty by helping Landrum push the building to the edge of the trailer, its contention is contradicted by Dawn's deposition testimony. In her deposition, Dawn testified as follows:

> Q: So walk me through between once he gets the "wide load" signs laid on the ground and to when he says, "Hey, Dawn, can you come over here and help me push this?"
>
> A: He had pushed the building, and then I guess it had stopped. And he just said, "Hey, do you mind giving me a hand and just pushing it to the end of the trailer?"
>
> * * *
>
> Q: Could you see – did you actually physically see him push the building the first time?
>
> A: I saw him when he started pushing it, yes.
>
> Q: Did you see when the build – the  –  Shelter Number 1 got caught in a bind and wouldn't move further?

13

A:     No, I didn't see that.

Q:     Did you hear anything that caused you to think that it was caught in a bind and wouldn't move anymore?

A:     No.

* * *

Q:     And no – nothing else between that time and until the time Jeff comes over and says, "Can you give me a hand"?

A:     Yeah.  He didn't actually come over.  He just turned and asked me to help him.

* * *

Q:     During the time that you initially saw Jeff push the shelter until the time he turned to you and said, "Can you give me a hand?" did you express any concern about the manner and means in which he was unloading that shelter?

A:     No.

Q:     At the point in time where he says, "Can you give me a hand?" you say, "No problem," and go in and assist, right?

A:     Correct.

Q:     At that point in time, you become part of the unloading procedure?

A:     Correct.

By inserting herself in the unloading procedure, Dawn undertook a duty to protect Landrum from dangers that an ordinarily prudent person could foresee were a likely result of the situation.  Dawn clearly "*acted* in a way that requires the imposition of a duty where one otherwise would not exist."  *Nall*, 404 S.W.3d at 555 (emphasis added).  Landrum relied on Dawn's assistance in unloading, which is demonstrated by his request for Dawn to help push the building to the edge of the trailer.  Dawn's assistance in pushing the building to the edge of the trailer increased a risk of harm to Landrum because neither a winch, hook, rope, or chain was being utilized to prevent the building from tipping over  *See id.* at 555–56.

14

Dawn did not express any concern about the manner or means in which Landrum used to unload the building. In fact, when it became reasonably foreseeable that the unloading procedure was unsafe, Dawn failed to take remedial measures. Instead, Dawn stopped rendering assistance to Landrum and left him to lower the building on his own.

Having viewed the evidence in the light most favorable to appellant, we conclude that Appellee has not established that no genuine issue of material fact exists such that Appellee was entitled to judgment as a matter of law.

The dissent maintains that the evidence is "undisputed" that Dawn's actions were limited to helping appellant push the building approximately one foot; however, this is misleading because it fails to address the issue of whether Dawn's actions were part of the unloading process. A fact issue remains as to whether Dawn, as a corporate officer of 3 Aces, upon inserting herself in the unloading process, failed to continue to render Landrum assistance in a safe and reasonable manner.[4] Accordingly, we hold that the trial court erred in granting summary judgment in favor of 3 Aces on appellant's negligent undertaking claim. *See* Tex. R. Civ. P. 166a.

Appellant's second issue is sustained.

## III. CONCLUSION

We affirm the trial court's denial of appellant's motion to reconsider and motion for new trial. We reverse the trial court's order granting 3 Aces' motion for summary judgment and remand to the trial court for further proceedings consistent with this opinion.

---

[4] "The nonexistence of a duty ends the inquiry into whether negligence liability may be imposed." *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998).

/s/      Margaret "Meg" Poissant
Justice


Panel consists of Justices Zimmerer, Poissant, and Wilson (Wilson, J., dissenting).