**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00201-CV**
_____

**NIXON FAMILY PARTNERSHIP, LP, Appellant**

**V.**

**JET LENDING, LLC AND FIRST NATIONAL TITLE INSURANCE COMPANY, Appellees**

_____

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 18-07-09526-CV**
_____

**MEMORANDUM OPINION**

Appellant Nixon Family Partnership, LP (Nixon or Appellant) appeals from a final judgment in this suit to quiet title to property that Nixon purchased at a foreclosure sale. On appeal, Nixon raises six issues. Finding no error, we affirm.

1

Background[1]

Plaintiffs Mohamad Mazen Saijari and Wahde Seijari (collectively Saijari or Plaintiffs) filed suit against Defendants Qayssar Duair, Joseph Robert Shaw, Jet Lending, LLC, Capital Title of Texas, LLC, and Nixon in an action to quiet title on real property in Montgomery County ("the Property"). According to Plaintiffs' petition,[2] Saijari purchased the Property in 2004 by Special Warranty Deed with Vendor's Lien, which was recorded in Montgomery County's real property records. Saijari alleged that in May 2018, Duair (or someone acting on his behalf) signed and then in June 2018 recorded a fraudulent deed and created a cloud on title for the Property. Saijari alleged that the fraudulent deed reflected that Saijari sold the Property to Duair, but Saijari alleged that Saijari did not know anything about the purported sale and Saijari had never met or heard of Duair. Then, on July 19, 2018, Jet Lending loaned Duair money and took a lien against the Property pursuant to a Deed of Trust dated July 19, 2018, and the Deed of Trust listed Duair as the grantor, Jet Lending as the beneficiary, and Clifford D. Harmon as the trustee. Capitol Title recorded the Deed of Trust in the Montgomery County real property records and provided title insurance to Jet Lending.

---

[1] Not all parties to the underlying lawsuit are parties on appeal. We discuss relevant pleadings, rulings, and their contents only as necessary to our disposition of the issues before us.

[2] We refer to the Plaintiffs' Third Amended Petition, the live petition at the time of the trial court's final judgment, as the "petition."

2

According to the petition, on or about July 22, 2018, Saijari discovered that Jet Lending had the Property listed in a foreclosure sale without Saijari's permission, and that Jet Lending and Capital Title knew that the deed of trust from Duair to Jet Lending was fraudulent. The Property was ultimately sold at the foreclosure sale to Nixon. Saijari filed a police report with the Montgomery County Police Department. According to the Petition, a representative with Capital Title was aware of issues with Duair and had him sign documents issued by Capital Title or Jet Lending. Saijari further alleged that Duair was indicted for felony theft two days before Jet Lending obtained the deed of trust against the Property. Duair was also indicted for forged deeds. Saijari asserted numerous causes of action against all the Defendants, including a quiet title action, a claim for declaratory judgment, and a request for injunctive relief.

Defendant Nixon filed a cross-action against Jet Lending LLC.[3] The cross-action alleged that based on Duair's fraudulent deed, Jet Lending loaned Duair money and Capital Title issued a Mortgagee's Title Insurance Policy to Jet Lending in the amount of $152,500 underwritten by First National Title Insurance Company. According to the cross-action, Saijari filed suit on July 25, 2018, claiming the deed was void because Saijari's signature that was on the deed

---

[3] Nixon's Third Amended Cross-Action Against Jet Lending LLC was the live pleading at the time of the trial court's final judgment.

was fraudulent. Jet Lending posted the Property for a foreclosure sale on October 4, 2018, after Duair missed a payment, Saijari then advised Jet Lending of the alleged fraudulent deed, and Jet Lending cancelled the sale. Nixon alleged in its cross-action that despite the notice of the fraudulent deed, Jet Lending then proceeded and foreclosed on its deed of trust lien and sold the Property to Nixon for $168,000 on December 4, 2018. According to Nixon, it would not have paid the $168,000 at the foreclosure sale had it known of the fraudulent deed and deed of trust. Nixon asserted causes of action for fraud, equitable subrogation, unjust enrichment, respondeat superior, money had and received, breach of contract, and statutory fraud against Jet Lending. Nixon sought a judgment against Jet Lending for recission in the amount of $168,000 together with attorney's fees and costs and punitive damages, or in the alternative, a judgment for equitable subrogation in an amount up to $168,000 plus costs and attorney's fees.

Nixon also filed a third-party complaint against First National Title Insurance Company (First National) alleging that First National issued Jet Lending a mortgagee's title insurance policy for $152,000 which insured that the Jet Lending Deed of Trust had a valid lien on the Property. Nixon sought equitable subrogation of the policy limits of the title insurance policy by First National if Saijari successfully proved their claims against Nixon. According to Nixon's third-party complaint, if the deed from Saijari to Duair is void, then all subsequent transfers of

4

title are also void, and Capital Title would owe Jet Lending the policy limits of the mortgagee's title insurance policy. Nixon asserted that if the Jet Lending deed of trust is void, then Jet Lending has a breach of contract claim against First National on the insurance policy, and Nixon is subrogated to Jet Lending's claim against First National on the policy because Nixon "paid Defendant First National's debt owed to Jet Lending LLC" when it purchased the Property at the foreclosure sale. In the alternative, Nixon argued that, as an assignee of the Jet Lending deed of trust lien, it is subrogated to Jet Lending's deed of trust lien and the debt it secures and becomes entitled to enforce the claim against the mortgagee's title policy. Nixon also asserted a claim for breach of contract, asserting that "[a]s an assignee of the 'rights' of the creditor, Jet Lending LLC, and of Jet Lending LLC's Deed of Trust Lien Nixon would, as assignee, be entitled to enforce Jet Lending LLC's breach of contract claim against Defendant First National pursuant to the insurance policy insuring the validity of the assigned lien." Nixon sought damages against First National for the policy limits up to $168,000.

Jet Lending filed a traditional motion for summary judgment on Nixon's cross-claims. The trial court initially granted Jet Lending's motion for summary judgment on all Nixon's claims for breach of warranty, breach of contract, unjust enrichment, money had and received, respondeat superior, and equitable subrogation and denied Jet Lending's motion for summary judgment on Nixon's fraud claim. In

5

a modified order, the trial court granted the motion as to Nixon's claims for breach of warranty, breach of contract, unjust enrichment, and money had and received, but denied the motion as to Nixon's cross-claims for fraud and equitable subrogation.

Nixon and First National filed cross motions for traditional summary judgment on Nixon's third-party claims against First National. First National argued in its motion for summary judgment that Nixon, who was not an insured under the First National title insurance policy, was not entitled to equitable relief because (1) Nixon assumed the risk that Duair lacked an ability to convey a security interest to the Property; (2) Nixon has unclean hands; (3) Nixon is not an "involuntary player[;]" and (4) the impact of allowing Nixon to become equitably subrogated to the rights of an insured under the First National insurance policy are enormous because it rewards a lack of diligence. Nixon argued in its motion for summary judgment that Nixon was the purchaser at a void foreclosure sale and as a matter of law was subrogated to the rights and interest of the mortgagee, Jet Lending; that Nixon was an assignee of the "rights and interests" of the creditor, Jet Lending, and of Jet Lending's rights and interests in the Duair note and deed of trust; that Nixon, as an assignee, is an "insured" entitled to enforce the policy and collect the policy limits; despite Nixon having made proper and timely demand on First National to perform the policy and pay the policy limits, First National has failed and refused to do so; Nixon's breach of contract claim against First National is pursuant to the

6

insurance policy insuring the validity of the assigned Duair note and lien; and it is undisputed that the policy exists, that Nixon is the owner of the Duair indebtedness, that Nixon has made demand for payment of the policy limits which was refused by First National, and that First National breached the contract. Nixon also disputed First National's claim that Nixon had unclean hands.

The trial court initially denied First National's motion for summary judgment and granted Nixon's motion for summary judgment, but the trial court later granted First National's motion for reconsideration, granted First National's motion for summary judgment, and entered a take-nothing judgment against Nixon on its claims against First National.

After a trial on Nixon's claims against Jet Lending, the jury returned a verdict in favor of Jet Lending on two questions and found that Jet Lending did not commit fraud or fraud by nondisclosure against Nixon. The jury returned a verdict in Nixon's favor on another question and found that Jet Lending committed statutory fraud against Nixon but found that Nixon failed to exercise reasonable diligence in deciding whether to purchase the Property at the foreclosure sale. The jury found that Nixon was 15% at fault and assessed damages of $168,000 and awarded Nixon reasonable and necessary attorney's fees. Jet Lending filed a motion for judgment notwithstanding the verdict and Nixon filed a response. The trial court granted Jet Lending's motion for judgment notwithstanding the verdict as to the statutory real

7

estate fraud portion of the verdict, and the trial court entered an interlocutory take nothing judgment as to Nixon's claims against Jet Lending.

In its First Amended Final Judgment, the trial court ordered, in relevant part, that Plaintiffs are the lawful owners of all right, title, and interest in and to the Property; that Duair, Jet Lending, Nixon and their successors and assigns have no legal or equitable right, title, or interest in or to the property, and have never had any type of interest in the Property; that Duair's deed, Jet Lending's deed of trust, Jet Lending's collateral assignment, and any instrument purporting to create or convey an interest in the Property that is dependent on the validity of those instruments, were ineffective to pass title to the Property or create any interest or right in or to the Property in all respects; that Plaintiff shall take nothing on all other causes of action and claims asserted against Duair, Jet Lending, Capital Title, and Nixon; that Nixon shall take nothing on its claims and causes of action against Jet Lending; that Nixon shall take nothing on its third-party causes of action and claims against First National and First National shall recover all costs of court against Nixon for which execution may issue; and the trial court denied all other relief not granted in the judgment.[4]

_____

[4] The First Amended Final Judgment also incorporated earlier interlocutory orders discussed herein as well as additional orders, including the trial court's partial summary judgment in favor of Saijari that resolved the claims for trespass to try title in Plaintiffs' favor, and the trial court's default judgment against Duair.

Nixon filed a motion for new trial, which the trial court denied. Nixon appealed.

## Appellate Issues

In issue one, Nixon argues the trial court erred in denying Nixon equitable relief. In issue two, Nixon argues the trial court erred in granting summary judgment dismissing Nixon's breach of contract claims against Jet Lending. Nixon argues in issue three that the trial court erred in striking Nixon's fourth amended cross-action against Jet Lending. In issue four, Nixon contends the trial court erred in granting summary judgment dismissing Nixon's equitable subrogation claim against Jet Lending. In the fifth issue, Nixon argues the trial court erred in granting summary judgment dismissing Nixon's equitable subrogation and breach of contract claim against First National. In issue six, Nixon argues the trial court erred in granting a judgment notwithstanding the verdict.

## Nixon's Fourth Amended Cross-Action Against Jet Lending

Nixon argues in issue three that the trial court erred in striking Nixon's fourth amended cross-action against Jet Lending. According to Nixon, the amended pleading "was filed 7 days before trial, and the court did not set any other deadline for amended pleadings" and therefore, the amended pleading was timely under Texas Rule of Civil Procedure 63. Nixon argues that the trial court also erred in finding Jet Lending proved surprise. Nixon concedes that it filed the amended

9

pleading after the trial court had granted an interlocutory summary judgment as to Nixon's contract claim, but Nixon argues that it amended its pleadings to specifically identify the foreclosure sale receipt as a basis for Nixon's claim and Nixon argues the receipt was part of its summary judgment response previously filed with the trial court so there was no surprise.

When a party seeks to amend its pleading after the date established by a scheduling order, the movant must seek leave from the court. Tex. R. Civ. P. 63. Under Rule 63, "a trial court has no discretion to refuse an amendment unless: 1) the opposing party presents evidence of surprise or prejudice; or 2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment." *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990) (citations omitted). An amendment that is prejudicial on its face has three defining characteristics: (1) it asserts a new substantive matter that reshapes the nature of trial itself; (2) the opposing party could not have anticipated the new matter in light of the development of the case up to the time the amendment was requested; and (3) the amendment would detrimentally affect the opposing party's presentation of the case. *Halmos v. Bombardier Aerospace Corp.*, 314 S.W.3d 606, 623 (Tex. App.—Dallas 2010, no pet.) (citing *Smith Detective Agency & Nightwatch Serv., Inc. v. Stanley Smith Sec., Inc.*, 938 S.W.2d 743, 749 (Tex. App.—Dallas 1996, writ denied)).

In its April 2, 2019 docket control order, the trial court set an amended pleading deadline for 90 days before the trial setting of December 2, 2019, and the order explicitly stated that, unless otherwise ordered by the court, the deadline would remain even if the trial date was reset. On November 8, 2019, the trial court signed an order resetting the trial for February 2020, and the new date did not alter the deadline established in the April 2, 2019 order. Nixon filed its Fourth Amended Cross-Action Against Jet Lending on February 3, 2020, well after the deadline for amended pleadings but seven days before the trial. The amended pleading added allegations that Jet Lending provided Nixon a receipt wherein Jet Lending agreed that in the event the sale was voided or if any third party voided Jet Lending's Deed of Trust Jet Lending would refund Nixon's $168,000, and the amended pleading alleged that (1) Jet Lending committed fraud because it made a promise to Nixon which Jet Lending did not intend to perform when made and Nixon justifiably relied upon the promise to its detriment; and (2) Jet Lending breached its contract with Nixon because it failed and refused to refund Nixon's $168,000 as allegedly provided for in the receipt. Jet Lending filed a motion to strike, arguing that allowing the amendment would be highly prejudicial to Jet Lending and would operate as a complete surprise because Nixon had never alleged in any of its earlier cross-action petitions that there was an enforceable agreement based on the receipt given at the foreclosure sale or that the receipt constituted a promise by Jet Lending to refund

11

Nixon's money of which it had no intention to perform. Jet Lending argued that the first time it saw the receipt was in preparation for filing its motion to strike and that it did not draft the receipt nor authorize its use. According to Jet Lending, the amendment was also prejudicial on its face because permitting the amendment would raise issues not previously at issue in the case, such as the preparation and authorization of the receipt, Jet Lending's knowledge of the receipt, and the proper interpretation of the receipt, and Jet Lending would be denied the opportunity to conduct discovery on those issues and the opportunity for resolution by summary judgment. Jet Lending argued that the amendment would allow Nixon to

> completely reshape this case to assert new causes of action not (a) based on the posting of property for foreclosure constituting an affirmative statement or (b) on a failure to disclose the nature of [Nixon's] allegations but now on the purchaser's receipt constituting a stand-alone agreement with Jet Lending and Jet Lending's promise it lacked the intention to perform.

Jet Lending attached an affidavit to its motion to strike. In that affidavit, a member of Jet Lending, LLC attested, among other things, that he had never seen the receipt until after Nixon had filed the amended petition, that he nor anyone else at Jet Lending authorized or approved the use of the receipt, that neither Jet Lending nor its counsel drafted the receipt, and that throughout the litigation Jet Lending did not have any indication that the receipt formed any basis for Nixon's cross-claims against Jet Lending. Jet Lending also attached a copy of the receipt and an affidavit of Jet Lending's counsel of record who attested that emails attached to his affidavit

12

evidenced that Jet Lending was not originally copied on an email attaching Nixon's document production and the production was not received until later (the date Nixon filed the amended pleading).

The trial court found that the amended pleading was untimely and would cause surprise and prejudice to Jet Lending. The trial court denied Nixon's motion for leave to amend and granted Jet Lending's motion to strike.

On this record, we cannot say the trial court abused its discretion in striking Nixon's amended pleading. The trial court could have reasonably concluded that the amended pleading added allegations and claims premised upon the receipt and reshaped Nixon's claims, that Jet Lending could not have anticipated the new cause of action in light of the development of the case up to the time the amendment was requested, and that the amendment would detrimentally affect Jet Lending's presentation of the case. *See Halmos*, 314 S.W.3d at 623 (citing *Smith Detective Agency & Nightwatch Serv., Inc.*, 938 S.W.2d at 749). The trial court had discretion to refuse the amendment. *See Greenhalgh*, 787 S.W.2d at 939. We overrule issue three.

<u>Summary Judgment in favor of Jet Lending on Nixon's Breach of Contract and Equitable Subrogation Claims</u>

In issues two and four, Nixon argues the trial court erred in granting summary judgment dismissing Nixon's breach of contract and equitable subrogation claims against Jet Lending. The trial court granted Jet Lending's summary judgment and

13

entered a take-nothing judgment against Nixon for its claims of breach of warranty, breach of contract, unjust enrichment, money had and received, respondeat superior, and equitable subrogation, and the trial court denied Jet Lending's summary judgment as to Nixon's cross-claim for fraud which was later submitted to a jury. We review grants of summary judgment de novo. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). The movant for a traditional motion for summary judgment has the burden to establish that no genuine issues of material fact exist, and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). If the moving party produces evidence entitling it to a summary judgment, the burden shifts to the nonmovant to present evidence that raises a material fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 548-49. Every reasonable inference must be indulged in favor of the nonmovant, and any doubts must be resolved in the nonmovant's favor. *Id.* at 549. Because the trial court's orders in this case granting the partial summary judgment do not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d

14

211, 216 (Tex. 2003) (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)).

In issue two, Nixon argues the trial court erred in granting summary judgment dismissing Nixon's breach of contract claims as to Jet Lending. According to Nixon, Jet Lending hired the Trustee to foreclose its deed of trust and Nixon and Jet Lending had an agreement, evidenced by the Trustee's "Purchaser's Receipt" that Nixon would pay $168,000 and in exchange, Jet Lending would provide Nixon with a valid deed. Nixon argues this receipt was a contract and identified the parties and outlined the terms of their agreement, and that after the sale was invalidated by court order, Jet Lending refused to return the purchase price paid by Nixon. Nixon asserts that the Trustee's "Purchaser's Receipt" was attached to Nixon's summary judgment response and admitted into evidence without objection and that, although the court dismissed Nixon's breach of contract claims, the same receipt was also entered into evidence during the jury trial. According to Nixon, it presented sufficient evidence of the parties' agreement and the trial court erred in dismissing Nixon's breach of contract claim by summary judgment.

Nixon never alleged in Nixon's Third Amended Cross-Action Against Jet Lending (the live pleading at the time the trial court granted Jet Lending's motion for summary judgment) or in Nixon's response to Jet Lending's motion for summary judgment that the Purchaser's Receipt was the contract on which Nixon based its

15

breach of contract claim. Because Nixon failed to raise the issue in the trial court, we are precluded from reviewing the merits of this argument. *See Garcia v. Garza*, 311 S.W.3d 28, 44 (Tex. App.—San Antonio 2010, pet. denied) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979) ("A party cannot raise new reasons why a summary judgment should have been denied for the first time on appeal.")); *see also* Tex. R. App. P. 33.1. We overrule issue two.

In issue four, Nixon argues the trial court erred in granting summary judgment dismissing Nixon's equitable subrogation claim against Jet Lending, an alternative theory of recovery to Nixon's claim for recission. Nixon argues that it purchased the Property at a void foreclosure sale and that, under the doctrine of equitable subrogation, as a matter of law Nixon has the right to make an equitable subrogation claim. According to Nixon, because its equitable subrogation claim related to Jet Lending's note and deed of trust, Jet Lending is a proper Defendant for the equitable subrogation claim and not First National.

The trial court originally granted Jet Lending's motion for summary judgment as to Nixon's equitable subrogation claim, and the trial court later modified the order and denied Jet Lending's motion for summary judgment as to Nixon's equitable subrogation claim. Therefore, that issue was not resolved by a summary judgment order. Nixon contends that prior to the jury's verdict the trial court orally "promised" that the judgment that resulted from the trial would include

16

a provision that Nixon is entitled to equitable subrogation, but the final judgment stated that Nixon was entitled to a "take nothing judgment" on all of Nixon's claims against Jet Lending.[5]

_____

[5] Just prior to the charge conference, Nixon's attorney brought up the equitable subrogation claim, and the following exchange occurred between the attorneys and the trial court:

> [Nixon's counsel]: Judge, before we do that, since we are talking about motions for instructed verdict, I had mentioned to the Court that at the appropriate time I would bring up the equitable subrogation.
>
> THE COURT: Yes, sir, that's correct.
>
> [Nixon's counsel]: We have agreed there is no dispute about that. And so it is an alternative pleading. We talked about it being a remedy and all of that. But I would like to at least have the Court enter a judgment that Nixon is entitled to equitable subrogation.
>
> THE COURT: Okay. And I believe that was going to be a matter of agreement.
> Is that the case, [Jet Lending's counsel]? Do you agree?
>
> [Jet Lending's counsel]: Jet Lending does not dispute because in the event that -- equitable subrogation would only come in play in the event that Nixon does not prevail in its other claims for fraud against Jet Lending. So in that situation, whether they are -- you know, their rights, whether they are equitably subrogated, that has no effect on Jet Lending. And so it doesn't oppose or take any position on equitable subrogation.
>
> THE COURT: Okay. Well, I appreciate that. And thank you both for your cooperation on that. That will be granted. Nixon Family Partnership, LP is entitled to the remedy of equitable subrogation and that is something that would be included in the ultimate judgment to be rendered in this case. I guess I shouldn't say "ultimate" at this point. We are still at interlocutory stage.

In a civil proceeding like this, a trial court's written judgment controls over its oral pronouncements. *See Hines v. Maple Hous. of Beaumont*, No. 09-17-00381-CV, 2019 Tex. App. LEXIS 4912, at *8 (Tex. App.—Beaumont June 13, 2019, no pet.) (mem. op.) (a trial court's written judgment controls in a civil case); *Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 84 n.21 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *Hamilton v. Empire Gas & Fuel Co.*, 110 S.W.2d 561, 566 (Tex. 1937)) ("Recitals in a judgment or signed order of the court thus control over conflicting recitals in the record."). We overrule issue four.

### Summary Judgment for First National on Nixon's Equitable Subrogation and Breach of Contract Claims

In its fifth issue, Nixon argues the trial court erred in granting summary judgment dismissing Nixon's alternate theory of recovery for equitable subrogation and breach of contract claim against First National. Nixon argues these claims are valid as a matter of law. Specifically, Nixon argues that the language of the title policy issued by First National to Jet Lending defines the insured under the policy as including "successors in ownership," and Nixon stepped into the shoes of Jet Lending and became an "equitable assignee" and "successor in ownership" of the

---

But, in any event, the judgment that will result from this trial will include a provision that Nixon is entitled to equitable subrogation.

18

note and deed of trust previously held by Jet Lending. According to Nixon, because Nixon was an assignee of Jet Lending's note and deed of trust, the First National policy covers Nixon's claims against First National.

In our de novo review of a trial court's summary judgment, we apply the same standard of review as we did above when we addressed the trial court's partial summary judgment against Nixon on its claims against Jet Lending. *See Nixon*, 690 S.W.2d at 548-49. When both parties file competing motions for summary judgment, after reviewing the evidence presented by both sides, we "render the judgment the trial court should have rendered." *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641-42 (Tex. 2015) (citing *Comm'rs Ct. of Titus Cty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)). Because in its order granting summary judgment in favor of First National the trial court did not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court in the motion for summary judgment and preserved for appellate review are meritorious. *See Knott*, 128 S.W.3d at 216.

First National argues on appeal that because the summary judgment order did not state the grounds upon which the trial court granted summary judgment and because Nixon has not challenged on appeal several independent grounds stated in First National's motion for summary judgment, this Court must affirm the summary judgment. When a summary judgment motion alleges multiple grounds and the order

granting summary judgment does not specify the ground on which the summary judgment was rendered, the appellant must challenge and negate each and every basis for the summary judgment on appeal. *See Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.). "If summary judgment may have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed." *Id.* According to First National,

> [n]owhere in its brief does Nixon challenge[] [First National]'s arguments that Nixon: (a) assumed the risk Duair lacked the ability to convey the property; (b) had unclean hands and failed to search for the properly recorded lis pendens; (c) is not an "involuntary payor" as required to be entitled to equitable subrogation; (d) cannot be subrogated to insurance benefits and that such an argument is not supported by public policy considerations; and (e) previously had its equitable subrogation claims dismissed by the trial court and that Nixon's rehashed claims should be summarily dismissed.

Nixon, however, argues on appeal that because the trial court initially denied First National's motion for summary judgment, Nixon only needed to challenge the three grounds for summary judgment First National presented in its motion to reconsider the summary judgment, which was thereafter granted. Nixon contends that the motion to reconsider only focused on three arguments: (1) Nixon's breach of contract claim is not ripe; (2) the court's order improperly expanded the equitable subrogation doctrine; and (3) the First National policy terminated upon foreclosure. According to Nixon, it briefed all three of these issues. Nixon further argues that "the trial court specifically stated upon which ground it was granting summary

20

judgment[]" because of certain language in the trial court's order granting First National's motion for reconsideration.

The record before us indicates that in its motion for reconsideration First National argued there were three "reasons" why the trial court should grant the motion. In stating its three reasons, First National also expressly stated that "[i]n seeking reconsideration, [First National] is not abandoning any of its previously asserted positions and incorporates same herein." So, in filing its Motion to Reconsider First National did not abandon its other stated grounds for summary judgment. After reconsidering its earlier order denying the summary judgment, the trial court entered an order granting First National's motion for summary judgment. Therein, the trial court did not state the grounds on which it granted the summary judgment. Nixon does not dispute that the order granting First National's motion for summary judgment did not state the grounds for the ruling, but Nixon contends that the language in the trial court's order granting First National's motion for reconsideration specified the ground upon which the trial court would be granting summary judgment. Nixon cites no authority, nor are we aware of any, that supports Nixon's position that recitals in an order on a motion for reconsideration would absolve an appellant of challenging all summary judgment grounds on appeal when the summary judgment order itself does not specify the grounds on which the summary judgment was rendered. Because the summary judgment order did not state

the grounds upon which the trial court granted summary judgment and Nixon did not challenge all independent bases of First National's motion for summary judgment on appeal, this Court must affirm the summary judgment. *See id.* We overrule issue five.[6]

## Judgment Notwithstanding the Verdict

In issue six, Nixon argues the trial court erred in granting a judgment notwithstanding the verdict because it granted Jet Lending's motion for JNOV on Jet Lending's argument that it was not liable for statutory fraud based on the jury's answer to the jury question regarding diligence. In response, Jet Lending restates on appeal the twelve grounds it argued in its motion for judgment notwithstanding the verdict:

> (1) the promissory fraud theory should not have been submitted to the jury because it was excluded from trial;
>
> (2) the jury's answer was not supported by a pleading;
>
> (3) any statement made by the substitute trustee was a statement made on behalf of the debtor, not Jet Lending;
>
> (4) the alleged promise of a refund that it contended supported a statutory fraud claim was only a promise to refund if there was a defect in the foreclosure process, which Nixon did not allege or prove at trial;
>
> (5) Nixon assumed all risk associated with the purchase;

---

[6] We decline Nixon's request on appeal to allow Nixon additional time for more briefing on the other issues contained in First National's motion for summary judgment.

22

(6) there was no evidence that Jet Lending lacked a present intention of performing the alleged promise;

(7) the undisputed evidence showed that Nixon did not rely on any alleged promise or representation when it submitted its foreclosure bid;

(8) the statement in the purchaser's receipt was not a promise collateral to the contract and therefore not the type of contract that can support a promissory fraud theory of liability;

(9) Nixon failed to present any evidence that the trustee made any actionable statement in order to induce Nixon to purchase the property;

(10) this theory of liability is precluded by the merger doctrine;

(11) Nixon presented no evidence Jet Lending made a material misstatement; and

(12) the jury's finding of lack of reasonable diligence precludes Nixon's recovery.

Jet Lending argues that Nixon only challenged the grounds relating to assumption of the risk and reasonable diligence. Nixon concedes in its reply brief that Jet Lending included a dozen reasons to support its position in its motion for JNOV and that the order did not specify the ground upon which the trial court granted the JNOV, but Nixon argues that it "properly briefed its opposition to the court's JNOV" because during the oral argument on the motion for JNOV the trial court "focused only on a specific issue, implying she denied the other allegations."

Because the trial court did not specify in the order granting JNOV which of Jet Lending's grounds it found meritorious, on appeal Nixon "has the burden of

23

showing that the judgment cannot be sustained on any of the grounds stated in the motion." *Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991). This means that we must affirm the judgment if (1) any ground stated in Jet Lending's motion was meritorious, or (2) Nixon failed to raise any of the grounds as an appellate issue. *See Ballesteros v. Jones*, 985 S.W.2d 485, 498-99 (Tex. App.—San Antonio 1998, pet. denied) ("Jones's motion for judgment notwithstanding the verdict rested on several independent grounds. Because the trial court's judgment did not specify which grounds it was granted on, Ballesteros had the burden to establish that the judgment could not be supported on any of the grounds set out in Jones's motion. Otherwise, Ballesteros has waived her right to question any ground not challenged.") (citations omitted); *Herndon v. First Nat'l Bank of Tulia*, 802 S.W.2d 396, 400 (Tex. App.—Amarillo 1991, writ denied) ("[W]here the judgment of the trial court rests upon two or more independent grounds, the appellant must attack each ground on appeal or the judgment must be affirmed as resting upon a ground not brought forward as error."); *Monk v. Dallas Brake & Clutch Serv. Co.*, 697 S.W.2d 780, 783-84 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (appellant fails to carry its burden if it does not address each ground on which the trial court might have granted motion for judgment notwithstanding the verdict) (citing *McKelvy v. Barber*, 381 S.W.2d 59, 62 (Tex. 1964)).

24

Nixon concedes that it did not address on appeal many of the grounds of Jet Lending's motion for JNOV. Because Nixon failed to address each of these grounds in its appellate brief, it waived any challenge to the grounds it failed to address. *See Monk*, 697 S.W.2d at 784 (affirming judgment notwithstanding the verdict because appellant failed to address each ground that might have been basis of judgment). Accordingly, we overrule issue six.

<u>Denial of Nixon's Claim for Equitable Relief</u>

In issue one, Nixon argues the trial court erred in denying Nixon equitable relief. Nixon's equitable relief arguments are based on its position that the trial court erred in granting summary judgment in favor of Jet Lending and in granting Jet Lending's motion for JNOV. We have already concluded that the trial court did not err in granting summary judgment in favor of Jet Lending and in granting Jet Lending's motion for JNOV. Accordingly, we conclude the trial court did not err in denying Nixon equitable relief. We overrule issue one.

Having overruled Nixon's appellate issues, we affirm the trial court's judgment.[7]

---

[7] We need not address Jet Lending's cross-issue, as it would not result in greater relief. *See* Tex. R. App. P. 47.1.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on March 24, 2022
Opinion Delivered August 4, 2022

Before Kreger, Horton and Johnson, JJ.

26